James Robert PUGH *v.* STATE of Arkansas

CR 02-464 89 S.W.3d 909

Supreme Court of Arkansas
Opinion delivered November 21, 2002

*Marianne L. Hudson,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Brad Newman,* Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant James Pugh was convicted of being an accomplice to capital murder and sentenced to life imprisonment for his involvement in the killing of Keith Van Maren. Pugh and a woman named Joy Doss were allegedly friends of Van Maren's, but Pugh and Doss suffocated and strangled Van Maren while he slept in the early morning hours of December 6, 2000. On appeal, Pugh does not challenge the sufficiency of the evidence. Instead, he asserts that the trial court made a number of evidentiary errors that prevented him from effectively demonstrating his affirmative defense of duress.

For his first point on appeal, Pugh asserts that the trial court erred when it refused to permit the complete testimony of Dr. John Anderson, a psychologist employed by the State Hospital. Pugh sought to introduce Dr. Anderson's testimony and diagnosis of Joy Doss to show that he was acting under duress and under threat from Doss, who had a borderline personality disorder. Before making a ruling on the relevancy of this testimony, the trial court first allowed Dr. Anderson to proffer his testimony about Doss; during the proffer, the doctor stated that he had diagnosed Doss with having a borderline personality disorder because she exhibited at least seven of the nine personality traits that are considered to comprise that disorder. The trial court then ruled that two of the traits were at least "remotely relevant," and permitted Pugh to elicit testimony from Dr. Anderson that Doss exhibited these two particular traits associated with the disorder: 1) having a

pattern of unstable and intense relationships; and 2) expressing intense anger and having difficulty in controlling her anger.

Dr. Anderson testified first that he diagnosed Doss as having borderline personality disorder, and then informed the jury about these two particular traits. He also stated that Doss's displays of "inappropriate, intense anger" would affect someone who lived with a person with borderline personality disorder. Dr. Anderson conceded, however, that he could not tell the jury how Pugh would react in any given situation.

We note initially that the State asserts that this issue is not preserved for appeal, because Pugh failed to object to the trial court's ruling that Pugh could only introduce testimony to those two traits. However, it appears that the issue is preserved, because the question both at trial and on appeal is one of relevancy — at trial, Pugh objected to the court's exclusion of Dr. Anderson's testimony on the remaining traits by asserting that the evidence was relevant to prove his defense of duress, and on appeal, he continues that same argument.

 Nevertheless, the point is without merit. This court has repeatedly held that the admission or rejection of evidence is within the discretion of the trial court, which this court will not reverse in the absence of a manifest abuse of that discretion. *Flores v. State*, 348 Ark. 28, 69 S.W.3d 864 (2002); *Burmingham v. State*, 342 Ark. 95, 27 S.W.3d 351 (2000); *Munson v. State*, 331 Ark. 41, 959 S.W.2d 391 (1998). Here, it is clear that the trial court did not abuse its discretion, and in fact soundly exercised its discretion in permitting even two of these personality traits to come in on the basis that they were "remotely relevant."

 Further, this court held in *Barr v. State*, 336 Ark. 220, 984 S.W.2d 792 (1999), that evidence of a co-defendant's psychiatric condition is not relevant to the charges at issue absent any showing that the defendant was aware of the other person's disorder or that he acted in reliance on it. Pugh makes no argument that he was aware of Doss's borderline personality disorder at the time the murder was committed. In addition, even though evidence of Doss's disorder was, at best, marginally relevant, the trial court nevertheless permitted Pugh to question Dr. Anderson

about his diagnosis of Doss and about the only two traits that were arguably relevant to his defense.

■ ■ Finally, Dr. Anderson testified that, based on his evaluation of Pugh, he did not believe Pugh was any more susceptible of reacting to Doss any differently than anyone else. To prove duress, one must show that he was compelled to act by a threat or use of unlawful force that a person of ordinary firmness in the actor's situation would not have resisted. Ark. Code Ann. § 5-2-208(a) (Repl. 1997). Given Dr. Anderson's testimony on this issue, it is unlikely that the jury would have found any differently if it had heard evidence regarding Doss's remaining personality traits. As Pugh cannot demonstrate how he was prejudiced by the exclusion of this other testimony, we hold that there was no abuse of discretion by the trial court.

Next, Pugh argues that the trial court erred in excluding Dr. Anderson's forensic report of Doss. The trial court permitted Pugh to introduce the doctor's cover letter attached to his report, containing the diagnosis of borderline personality disorder, but ruled that the remainder of the report would have been cumulative and irrelevant.

■ The trial court did not abuse its discretion in making this ruling, because the issue in this case was not Doss's psychological condition or diagnosis, but was instead the reasonableness of Pugh's reaction to her. See § 5-2-208(a). The judge had already permitted Dr. Anderson to testify on those areas of Doss's state of mind that had some bearing on Pugh's behavior, and the information contained in the forensic evaluation added nothing to the evidence that was already before the jury. Therefore, the trial court correctly ruled that this evidence was cumulative and irrelevant.

For his third point on appeal, Pugh challenges the trial court's exclusion of the testimony of Otis Doss, Joy Doss's estranged husband. Particularly, he asserts that this testimony was relevant to showing that Doss's borderline personality disorder was not just an abstract idea, but was instead a real disorder that manifested itself in a pattern of behavior. The court ruled that Otis Doss's testimony was not relevant.

■ Otis's proffered testimony revealed that Joy Doss was angry, destructive, and strong, and that she had once threatened to kill him. However, the defense of duress requires that the perceived threat or use of unlawful force be *against the actor* or another person; it does not encompass threats made to or force used against a third party of which the actor was unaware. Here, the issue was not Joy Doss's pattern of behavior, but is instead whether Pugh had a reasonable belief that he had no choice but to follow her orders to help kill Keith Van Maren. Further, Pugh conceded that Otis had never observed Doss's conduct toward Pugh, and thus the trial court was correct in ruling that there was no evidence in the proffer that would illuminate the relationship between Doss and Pugh.

Fourth, Pugh asserts that the trial court abused its discretion in refusing to admit a letter written by Doss to Sheila Uptegrove, a friend of Pugh, Doss, and Van Maren. In the letter, Doss complained of being lonely, hopeless, worthless, and despicable; Pugh sought to introduce it to demonstrate Doss's state of mind. The trial court excluded it, however, ruling that the letter was hearsay.

■ On appeal, Pugh argues that the question was one of relevance, and does not address the trial court's hearsay ruling. Even if his relevance argument had merit, which it does not, this court will still not reverse in light of Pugh's failure to attack the trial court's independent, alternative basis for its ruling. *See Pearrow v. Feagin*, 300 Ark. 274, 778 S.W.2d 941 (1989) (where trial court expressly based its decision on two independent grounds and appellant challenged only one on appeal, this court affirmed without addressing either). In any event, because it appears that the letter was written *after* the murder, the letter was not relevant to showing how Doss's state of mind affected Pugh, and the trial court committed no error in excluding it.

Finally, Pugh argues that the trial court erred when it permitted the prosecutor to inform the jury that the death penalty had been waived. Prior to trial, the State filed a motion in limine seeking to prevent Pugh from speaking to the jury about the sentencing range and possible punishments until the sentencing phase of the trial. At a pre-trial hearing, Pugh responded to the motion

by noting that the State intended to tell the jury that it had waived the death penalty. Pugh stated his belief that if the State was able to let the jury know that the death penalty would not be an issue, it seemed only proper that the jury be told the only alternative sentence would be life without parole. The trial court granted the State's motion in limine, reasoning that life without parole would not necessarily be the only other sentence that could be imposed, because it was possible for the jury to convict on one of the lesser-included offenses Pugh had requested, which would bring into play a whole range of sentencing options.

On appeal, Pugh asserts that permitting the jury to hear that the death penalty was not an option was improper. This point has no merit for two reasons. First, during voir dire, the prosecutor asked if the fact that the death penalty would not be an issue caused anyone to feel that the case was less serious; there was no response from the panel to this question. In posing the question, the prosecutor never said the death penalty had been waived, or that the State had shown Pugh mercy by not asking for death.

Second, Pugh relies on *Leaks v. State*, 339 Ark. 348, 5 S.W.3d 448 (1999), where the prosecutor stated — during closing arguments — that Leaks had already gotten a break because the State only charged him with first-degree murder, instead of capital murder. The *Leaks* court held that the prosecutor's statements suggested that the evidence could have supported a charge of capital murder, and his comments may have skewed the jury's deliberations in favor of first-degree murder instead of second-degree murder. However, this court held in *Hill v. State*, 344 Ark. 216, 40 S.W.3d 751 (2001), that there was no abuse of discretion by the circuit judge in allowing a reference to a death-penalty waiver to be made by the prosecutor. In distinguishing the facts in *Hill* from those in *Leaks*, the *Hill* court noted that the prosecutor in that case did not allude to offenses with which Hill had not been charged or argue that Hill had already been given a break.

Here, unlike in *Leaks*, the prosecutor never made any suggestions that could have caused the jury to suppose that the death penalty might have been warranted, or that Pugh was fortunate not to have had the death penalty as an option. *Hill*, rather

than *Leaks*, controls this issue, as the facts and the argument in *Hill* were nearly identical to the one presented here. Consequently, we are unable to conclude that the trial court erred in allowing the State to make this statement to the jury.

Affirmed.

IMBER, J., not participating.