2010 Ark. App. 627

**Patti Jo DAVIS–LEWALLEN, Appellant**

v.

**Matthew CLEGG and Katherine Clegg, Appellees.**

**No. CA 10–184.**

Court of Appeals of Arkansas.

Sept. 22, 2010.

---

**17.** *See Farmers Co-op. v. Biles,* 77 Ark. App. 1, 69 S.W.3d 899 (2002).

Tabitha Baertels McNulty, Little Rock, Scott Allen Emerson, Jonesboro, for appellant.

Keith L. Crestman, Jonesboro, Stacey Diane Ryall, Paragould, for appellee.

COURTNEY HUDSON HENRY, Judge.

Appellant Patti Jo Davis–Lewallen appeals the order entered by the Circuit Court of Clay County denying her petition for guardianship of her daughter's natural child, S.D., and granting the petition of appellees Matt and Kate Clegg to adopt S.D. For reversal, appellant contends that the circuit court erred in finding that it was not in S.D.'s best interest to be placed with appellant and that the circuit court's placement analysis was flawed. We affirm.

Appellant is the mother of Jimmi Crystal Davis who gave birth to S.D. on February 8, 2006. Sometime in early 2008, Jimmi and the child's putative father, Romi Villaluna, moved to Arkansas from Las Vegas, Nevada. Shortly thereafter, the couple returned to Las Vegas but left the child in Arkansas with relatives of Villaluna. According to appellant, she contacted the child-abuse hotline in Arkansas when she learned that S.D. had been left behind without a legal caregiver. On May 19, 2008, the Arkansas Department of Human Services (DHS) took emergency custody of the child and placed her in the foster home of appellees. The circuit court found probable cause to support that action and later adjudicated the child as being dependent-neglected. In both the probable cause and adjudication orders, the circuit court ordered a home study of appellant's residence in Palm Springs, California, through the Interstate Compact on the Placement of Children (ICPC). DHS initiated the process of obtaining the home study on July 12, 2008.

Neither Jimmi nor Romi ever returned to Arkansas, and the circuit court terminated their parental rights by an order dated April 29, 2009. The court gave DHS the authority to consent to adoption and directed DHS to develop a case plan with the goal of adoption.

DHS received the ICPC home study of appellant on May 11, 2009. The report noted that appellant had adopted S.D.'s half-sister, B.D., who was eight years old, and that the household also included Sharon Jones, a woman with whom appellant had shared an intimate relationship for ten years. The social services worker opined that appellant had demonstrated the ability to provide a loving and nurturing home for B.D., that appellant was involved in the child's activities, and that she was a respected member of the community as the president of the Parent Teacher Organization. The report stated that appellant suffered from COPD and that she had once participated in an inpatient treatment program for depression. The home study indicated that appellant had been arrested in 1989 for driving under the influence of alcohol and that she had been convicted of a reduced charge of "wet reckless" that carried a fine and an order to attend Alcoholics Anonymous. The report also mentioned that appellant was a recovering alcoholic who had been sober for sixteen years. The home study stated that appellant was unemployed and that she received disability benefits and benefits for B.D. totaling $1,163 per month. Appellant also reported Jones's gross income of $5,000 a month. The home itself consisted of four bedrooms and was considered adequate. In all, the home study approved the placement of S.D. with appellant.

For the last weekend in May 2009, the executive committee of DHS arranged for appellant and B.D. to visit S.D. DHS paid their hotel accommodations and travel expenses for the trip from California to Little Rock and made arrangements for S.D. to be transported from Jonesboro. On

June 5, 2009, the attorney ad litem for S.D. filed a motion seeking to suspend appellant's visitation with S.D. pending a hearing. The motion acknowledged the home study's approval of S.D.'s placement with appellant but noted that appellant would not be allowed to adopt S.D. under Arkansas law.[1] The motion also noted that appellees had been serving as foster parents of S.D. and that they were eligible to adopt her.

On June 5, 2009, appellees moved to intervene in the proceedings, and they also filed a petition seeking to adopt S.D. On June 25, 2009, appellant also moved to intervene, and she filed a petition for guardianship over S.D. DHS opposed appellees' petition to adopt S.D., favoring instead appellant's request to obtain guardianship in a purported effort to demonstrate ⌊4compliance with federal legislation. The circuit court consolidated the petitions for a joint hearing that was held over two days in September 2009.

After taking the case under advisement, the circuit court issued its decision granting appellees' petition for adoption and dismissing appellant's petition for guardianship in a detailed order entered on November 25, 2009. The circuit court found that appellees were fit and proper persons to adopt S.D., that they had the ability and resources to do so, and that their adoption of S.D. was in the child's best interest. In its finding of best interest, the court noted that S.D. had lived with appellees for sixteen months, that she had bonded closely with them, and that S.D. referred to appellees as her parents. The circuit court also relied on testimony that S.D. suffered from an attachment disorder and that she had made great progress while in appellees' care. The court found that it would be detrimental for S.D. to be removed from appellees' home. In contrast, the circuit court observed that appellant had minimal contact with S.D. prior to her entry into foster care and that appellant did nothing to develop a relationship during the year that S.D. was in the custody of DHS. The court also considered appellant's age and the fact that her sole income is derived from disability benefits. The circuit court also found that there were inaccuracies in the ICPC home study and that the report did not give clear guidance regarding appellant's true financial circumstances. The court also noted that appellant had recently gained temporary custody of S.D.'s seven-month-old half-brother. Further, the court found that DHS had unreasonably withheld its consent to appellees' petition for adoption, noting that its recommendation for S.D. to be placed in ⌊5appellant's home had been formulated by a DHS executive committee without the input of the attorney ad litem, appellees, or the Clay County DHS workers. The circuit court also discussed appellant's status and the application of Arkansas Code Annotated section 9–27–355(c)(1) (Repl.2009), which gives a preference to relatives in placement decisions when the relative meets all relevant child protection standards and it is in the juvenile's best interest. Although doubting whether the statute applied following the termination of parental rights, the court determined that appellant was not entitled to the preference because her rights as a grandparent were extinguished with the termination of her daughter's pa-

1. Arkansas Code Annotated section 9–8–304(a) (Repl.2009) provides that a minor may not be adopted or placed in a foster home if the individual seeking to adopt or to serve as a foster parent is cohabiting with a sexual partner outside of a marriage that is valid under the Arkansas Constitution and the laws of this state. Arkansas Code Annotated section 9–8–305 (Repl.2009) provides that "[t]his subchapter will not affect the guardianship of minors."

rental rights. Finally, the court noted that adoption is given a statutory preference over guardianship in determining permanency of a child under Arkansas Code Annotated section 9–27–338 (Supp.2008).

■ As her first point on appeal, appellant argues that the circuit court erred in finding that placing S.D. with her was not in the child's best interest. Essentially, she contends that the home study reflects that she met all of the requirements to obtain guardianship over S.D. While we review adoption proceedings de novo on the record, it is well settled that the decision of the trial court will not be disturbed unless clearly erroneous, giving due regard to the opportunity and superior position of the trial court to judge the credibility of the witnesses. *Moreno v. Knowles,* 2009 Ark. App. 164, 2009 WL 619185. A finding is clearly erroneous when, although there is supporting evidence in the record, the appellate court viewing the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Shields v. Kimble,* 2010 Ark. App. 479, 375 S.W.3d 738.

■ In the present case, the circuit court expressed concern about the home study because the case worker who prepared it relied on information supplied by appellant, whose credibility was called into question at trial when it was discovered that she had failed to inform the case worker about certain income and expenses. It was within the province of the circuit court to decide that the home study was not credible because of appellant's lack of candor with the worker. *See In re Adoption of Perkins/Pollnow,* 300 Ark. 390, 779 S.W.2d 531 (1989). Appellant also maintains that the financial affairs of appellees were not "rosy" and that the circuit court unfairly focused on the deficiencies in her financial situation. However, as appellant concedes in her argument, appellees had adequate means to care for the child, and we note that there was no evidence that cast doubt on appellees' credibility.

■ As further argument under this point, appellant contends that it was in S.D.'s best interest to be placed with her so that she could reside with her siblings. In any proceeding involving the welfare of a young child, the paramount consideration is the best interest of the child, and while keeping siblings together is a commendable goal and an important consideration as a general rule, it is but one factor that must be taken into account when determining the best interest of a child. *Ark. Dep't of Human Servs. v. Couch,* 38 Ark. App. 165, 832 S.W.2d 265 (1992). Here, S.D. barely knew her sister B.D., and S.D. was not even aware of the fact that she had a brother. Under these circumstances, we cannot say that the circuit court's decision to give little weight to this factor is clearly erroneous.

■ Appellant also argues that the circuit court gave undue weight to the bond that exists between S.D. and appellees. She contends that the bond formed only because there was a delay in obtaining the home study from California. However, there was testimony that the development of a bond between a child and foster parents is not unexpected. Moreover, appellant's argument overlooks the testimony that removing S.D. from appellees' custody would be detrimental to her in light of her attachment disorder. In addition, the bond between appellees and S.D. was not the only factor the circuit court considered in determining the child's best interest. The court found that appellees had the ability, resources, and stability to provide for S.D. The circuit court also noted that appellees did not have criminal histories, mental health issues, or substance abuse problems. The court took into consider-

ation appellant's age, health, and her financial situation. The circuit court also considered appellant's lack of involvement with S.D., both before and after she entered foster care. In sum, the court found that the best way for S.D. to flourish was to grant appellees' petition for adoption. We are not able to say that the circuit court's best-interest determination is clearly erroneous.

As her second point on appeal, appellant challenges the circuit court's analysis of several legal issues with regard to the circuit court's finding that DHS had unreasonably withheld its consent to the adoption by appellees. Arkansas Code Annotated section 9–9–206(a)(3)₈ (Repl.2009) states that "a petition to adopt a minor may be granted only if written consent to a particular adoption has been executed by any person lawfully entitled to custody of the minor or empowered to consent." One exception to this requirement is that the consent of a legal guardian is not necessary if the guardian "has failed to respond in writing to a request for consent for a period of sixty (60) days or who, after examination of his or her written reasons for withholding consent, is found by the court to be withholding his or her consent unreasonably." Ark.Code Ann. § 9–9–207(a)(8) (Repl.2009). This code section grants the circuit court the authority to decide the issue of whether DHS, as legal guardian of S.D., had unreasonably withheld its consent to adopt. *Patterson v. Robbins*, 295 Ark. 511, 749 S.W.2d 330 (1988). Neither this court nor the supreme court has provided a test as to what constitutes unreasonable withholding of

consent. *Id.; Tom v. Cox*, 101 Ark. App. 388, 278 S.W.3d 110 (2008).

■ In this case, the circuit court examined the reasons offered by DHS and found them insufficient to justify withholding consent to adoption. Appellant's argument is that DHS's position was based upon reason and logic and, therefore, should stand. One basis offered by DHS to withhold its consent was that guardianship with appellant is a form of permanency. The circuit court, however, ruled that adoption was a preferred disposition over guardianship or permanent custody with a relative based on the order of preferences list in Arkansas Code |₉Annotated section 9–27–338 (Supp.2008).² The statute does state that adoption is preferred over a guardianship as a permanent placement. Therefore, the circuit court did not err by giving effect to the statutory preference.

DHS also based its decision to withhold consent based on the "relative preference" found in Arkansas Code Annotated section 9–27–355(c)(1) (Repl.2009). This subsection of the statute provides that a "relative of a juvenile placed in the custody of the department shall be given preferential consideration for placement if the relative caregiver meets all relevant child protection standards and it is in the best interest of the child to be placed with the relative caregiver." The circuit court held that appellant was not entitled to the preference because she was no longer a "relative" following the termination of her daughter's parental rights. The circuit court cited *Suster v. Arkansas Department of Human Services*, 314 Ark. 92, 858 S.W.2d 122 (1993), and *Burt v. Arkansas*

---

2. The circuit court and the parties to this appeal have relied on the outdated version of Arkansas Code Annotated section 9–27–338. The legislature revised the statute in 2009, and the amended statute took effect on April 6, 2009, prior to the hearing in this matter. Appellant did not argue below, nor does she contend on appeal, that the circuit court

erred by utilizing the former statute. And, the supreme court has held that this specific issue may not be raised for the first time on appeal. *Lamontagne v. Ark. Dep't of Human Servs.*, 2010 Ark. 190, 366 S.W.3d 351. Therefore, we are obliged to apply the former version of the statute.

*Department of Health and Human Services,* 99 Ark. App. 402, 261 S.W.3d 468 (2007), as authority for its ruling. Both *Suster* and *Burt* held that a grandparent's rights are derivative of her offspring's parental rights and that the grandparent's rights were severed upon the termination of the offspring's rights.

Appellant's argument contesting the circuit court's ruling focuses on the language of Arkansas Code Annotated section 9–27–341(c)(1) (Repl.2009), which provides in part that "[a]n order terminating the relationship between parent and juvenile divests the parent and the juvenile of all legal rights, powers, and obligations with respect to each other." Appellant contends that, because the statute only refers to the severance of the relationship between parent and child, her relationship is not affected by the termination of her daughter's parental rights. According to Arkansas Code Annotated section 9–27–355, the preference afforded to relatives is honored only if the court should find that placement with the relative is in the child's best interest. We have already concluded that the circuit court did not err in finding that placement with appellant was not in S.D.'s best interest. Therefore, we need not discuss this issue any further. Moreover, we note that the provisions of section 9–27–355 concern the initial placement of a child after DHS obtains custody of a child, but the statute does not have any bearing on placement decisions following the termination of parental rights. *See Davis v. Ark. Dep't of Human Servs.,* 2010 Ark. App. 469, 375 S.W.3d 721.

We uphold the order of adoption.

Affirmed.

GRUBER and BAKER, JJ., agree.