2012 Ark. App. 75

**Breann BAYRON, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Children, Appellees.**

No. CA 11–895.

Court of Appeals of Arkansas.

Jan. 18, 2012.

Janet Lawrence, Conway, for appellant.

Tabitha Baertels McNulty, Little Rock, Melissa Bristow Richardson, Jonesboro, for appellee.

WAYMOND M. BROWN, Judge.

Appellant Breann Bayron appeals from the order terminating her parental rights to her children, B.B., born July 7, 2009; N.M., born March 12, 2004; and S.M., born February 19, 2007.[1] Bayron argues that the evidence was insufficient to support termination and that the "likelihood of adoptability" was not proven. We affirm.

This case began on December 20, 2009, when the Arkansas Child Abuse Hotline received a call from Bayron's mother, Marsha Martinez, alleging inadequate supervision and abandonment. The Arkansas Department of Human Services (DHS) investigated the claim and took a seventy-two-hour hold on the children on or about December 30, 2009. DHS filed a petition for emergency custody on January 4, 2010, alleging that the removal of the children from parental or custodial care was necessary to protect the children from immedi-

ate danger. According to the supporting affidavit, Bayron had left her children in her mother's custody for approximately five months, without having much contact with them. An order for emergency custody was filed on January 4, 2010.

A probable-cause order was entered on January 27, 2010, stating that there was probable cause for the children to remain in the custody of DHS. The children were adjudicated dependent-neglected due to severe maltreatment in an order filed on April 8, 2010. The primary goal of the case was reunification, and Bayron was ordered to submit to random drug screens; to undergo a drug-and-alcohol assessment if she failed the drug screens; to attend any in/outpatient counseling necessary, and follow the recommendations of the counselors or therapists; to have a psychological evaluation; and to maintain stable housing, employment, and income. The court continued the goal of reunification following the April 29, 2010 review hearing. By the time of the August 6, 2010 review hearing, Bayron had failed to comply with the case plan or court orders: she had not obtained stable housing or employment, she had not taken parenting classes, she had not undergone drug treatment, and her present location was unknown. Following this hearing, reunification and relative placement were concurrent goals. The permanency-planning order filed on November 18, 2010, kept reunification as the goal and stated that Bayron would be given "the full year to work towards reunification." The order noted that Bayron was not compliant at the last hearing but had started visiting the children "in the last month." At the time of the hearing, Bayron was living with her sister in Tex-

---

1. The court also terminated the parental rights of Speedy Moss, Sr., the father of S.M., as well as "any and all putative fathers of [N.M.]" Speedy Moss is not the subject of this appeal. The court declined to terminate the parental rights of Scotty Shaw, the father of B.B.

arkana, was employed at a restaurant, and was testing negative on her drug screens. She was also scheduled to attend an alcohol-and-drug assessment with Kelvin Darr.

The fifteen-month permanency-planning hearing took place on February 24, 2011. In the order filed on April 13, 2011, the goal was changed to termination of parental rights. The court explained that Bayron had failed to comply with the case plan and court orders. The court noted that Bayron's visitation with her children was changed back to supervised. The order also stated that Bayron had tested positive for THC in a hair strand and urine test as recently as January 27, 2011. Bayron had also been arrested on February 8, 2011, after threatening to commit suicide. DHS filed a petition for the termination of parental rights on March 30, 2011.

The termination hearing took place on May 19, 2011. After the testimony, exhibits, and statements from the parties and counsel, the court granted DHS's petition for termination, finding that the children had been adjudicated dependent-neglected by the court and had continued out of Bayron's home for twelve months and, despite a meaningful effort by DHS to rehabilitate the home and correct the conditions that had caused removal, those conditions had not been remedied[2]; that other factors arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of the juveniles to the custody of Bayron is contrary to the juveniles' health, safety, or welfare and that, despite the offer of appropriate family services, Bayron has manifested the incapacity or indifference to remedy the subsequent issues or factors that prevent return of the juveniles to the custody of Bayron[3]; and that Bayron had subjected the children to aggravated circumstances as defined by Ark. Code Ann. § 9–27–303(6)(A) in that there is little likelihood that services to the family will result in successful reunification.[4] The court also relied on the ground that the parent had willfully failed to provide significant material support in accordance with the parent's means or to maintain meaningful contact with the juveniles[5]; however, it is apparent from the order and the court's oral ruling that this ground did not apply to Bayron. The court elaborated on the grounds:

The children were removed from the custody of their mother on or about December 30, 2009 due to abandonment and neglect by their mother. The Court found that an emergency existed and deemed that DHS made reasonable efforts to prevent removal under the circumstances. The juveniles were adjudicated dependent-neglected under Arkansas law. Initially, the mother was ordered to submit to random drug screens, complete and follow the recommendations of a psychological evaluation, attend counseling and parenting classes, and complete and [sic] drug and alcohol assessment. She was also ordered to obtain and maintain stable housing and employment. At a review hearing on April 29, 2010, DNA testing was ordered for the children and their putative fathers, Speedy Moss, Sr. and Scotty Shaw.

At the termination of parental rights hearing on May [19], 2011, the mother testified that even after her children

2. Ark.Code Ann. § 9–27–341(b)(3)(B)(i)(a) (Repl.2009).

3. Ark.Code Ann. § 9–27–341(b)(3)(B)(vii)(a) (Repl.2009).

4. Ark.Code Ann. § 9–27–341(b)(3)(B)(ix) (Repl.2009)

5. Ark.Code Ann. § 9–27–341(b)(3)(B)(ii)(a) (Repl.2009).

were removed, she went down a road she should not have taken. She testified that she was using drugs, was staying with different friends and maintained no home of her own. On November 12, 2010, the Court ordered that the mother would be given the full year to work towards reunification. The mother had not been compliant at the review hearing in August, [sic] 2010, and only started visiting the children very recently. She was living with her sister in Texarkana, was employed at a restaurant, and was testing negative on drug screens. She was scheduled to attend a drug and alcohol assessment with Kelvin Darr. She was given more opportunities to prove she could safely care for and parent her children, but her progress was short lived.

Soon after the November 2010 hearing, Ms. Bayron's compliance began to deteriorate rapidly. The mother's unsupervised weekend visitation was suspended in November 2010 because the mother took the children to her mother's house on Thanksgiving Day, 2010, got into a verbal fight with her mother because the grandmother refused to take Breann Bayron and . . . also take her children to her abusive boyfriend's home. On the following weekend, the mother returned [B.B.] with a diaper full of feces, urine, and diaper rash. Based on the amount of remaining diapers in the diaper bag, it appeared that [B.B.'s] diaper had been changed one time over the course of ten hours. The mother's visitation was subsequently moved back to supervised at DHS. She then stopped visiting the children altogether and refused any further cooperation with DHS.

The mother has consistently refused to give DHS any information on her residence. She testified today, May 19, 2011, that it was because she had none. Calyn Smith testified that she would have to pick the mother up from various gas stations due to the mother's refusal to tell DHS where she was staying. Ms. Bayron did not complete the drug and alcohol assessment though it was arranged by DHS. The mother was positive for THC on a urine and hair strand test on January 27, 2011. The mother was arrested on February 8, 2011 after getting into an argument at her mother's house and threatening to commit suicide. Ms. Bayron's driver's license is in current suspension status. She tested positive for THC again on March 22, 2011, even after the Court gave her one last opportunity.

Of all the services ordered, and that DHS has tried to provide, Breann Bayron has only completed parenting classes, and she did that only after the fifteen (15) month permanency planning hearing in February, 2011. She has only worked for five (5) weeks and has only had housing for three (3) weeks out of the entire seventeen (17) months that the children have been in foster care. She has only visited the children on an occasional basis, has failed numerous drug screens, refused to complete a drug and alcohol assessment, and refused home visits. Ms. Bayron testified that she is pregnant again and the father of the unborn child is currently incarcerated. No matter what DHS does, Ms. Bayron will not change her ways.

Bayron filed a timely notice of appeal.

We review cases involving the termination of parental rights de novo.[6] The grounds for termination must be prov-

---

6. *Grant v. Ark. Dep't of Human Servs.*, 2010   Ark. App. 636, 378 S.W.3d 227.

en by clear and convincing evidence.[7] When the burden of proving a disputed fact is by clear and convincing evidence, the question on appeal is whether the circuit court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous, giving due regard to the opportunity of the circuit court to judge the credibility of the witnesses.[8] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[9] A heavy burden is placed on the party seeking the termination of parental rights because it is an extreme remedy in derogation of the natural rights of the parents.[10] Nevertheless, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child.[11] Thus, parental rights must give way to the best interest of the child when the natural parents seriously fail to provide reasonable care for their minor children.[12] In addition to finding that the statutory grounds for termination exist, the court must also find that termination is in the best interest of the children, considering their likelihood for adoption and the potential harm of returning the children to the custody of their parent(s).[13]

Bayron argues that the evidence was insufficient to terminate her parental rights. Although one of the grounds the court relied on in terminating Bayron's parental rights was her subjecting the children to aggravated circumstances, she has failed to challenge that ground on appeal. When an appellant fails to attack the trial court's independent, alternative basis for its ruling, we will not reverse.[14] In any event, the order contains ample facts to support the court's grounds for terminating Bayron's parental rights.

For her second point, Bayron argues that the children's adoptability was not sufficiently proven. She relies on *Haynes v. Ark. Dep't of Human Servs.,*[15] to support her position that the evidence did not show that termination of her parental rights was in her children's best interest. *Haynes* is distinguishable. In *Haynes*, this court reversed an order terminating the father's parental rights. There, however, no evidence of adoptability of the children was introduced at the hearing.[16] Here, Lisa Forte, the adoption specialist, testified that the children are adoptable. She stated that she had been able to find adoptive parents for sibling groups, and that there had not been a time when she was unable to find such a home. The court had evidence with which to consider the likelihood of the children's adoption and made a finding that they

7. *Id.*

8. *Id.*

9. *Id.*

10. *Id.*

11. *Id.*

12. *Id.*

13. Ark.Code Ann. § 9–27–341(b)(3)(A) (Repl. 2009).

14. *See Pugh v. State,* 351 Ark. 5, 89 S.W.3d 909 (2002).

15. 2010 Ark. App. 28, 2010 WL 135194.

16. *Haynes,* 2010 Ark. App. 28, at 4, 2010 WL 135194.

were likely to be adopted.  Accordingly, we affirm.

Affirmed.

GRUBER and MARTIN, JJ., agree.