WAYMOND M. BROWN, Judge
Appellants appeal from the circuit court's order denying their motion for reconsideration of its ruling that Justin Stanley's consent to adoption was required. On appeal, appellants argue that (1) Stanley did not meet any of the requirements of Arkansas Code Annotated section 9-9-206[1] so that his consent was not required; (2) Stanley did not meet his burden under the requirements of Arkansas Code Annotated section 9-9-207,[2] even if registering with the putative father registry is a "similar acknowledgement of paternity" under Arkansas Code Annotated section 9-10-120(a) ;[3] and (3) Stanley was not "thwarted" in his efforts to comply with the mandatory requirements of Arkansas Code Annotated section 9-9-206. We affirm.
Stanley and Taylor Schmidt, both residents of the State of Indiana, met on a dating app on June 6, 2016, and dated for a little over a month before ending the relationship. B.D. was conceived on or around June 9, 2016. Stanley learned that Schmidt was pregnant on July 10, 2016. Schmidt ceased communication with Stanley on July 19, 2016.[4] Stanley attempted to contact Schmidt directly and indirectly through family members, ultimately learning in November 2016 that she had been incarcerated, though had not been advised *9 where she was incarcerated.[5]
On February 22, 2017, Schmidt told Stanley that she was giving B.D. up for adoption and had already picked out a family. Stanley registered with Indiana's putative father registry on February 24, 2017. On March 8, 2017, Stanley filed a verified petition to establish paternity in Ripley County Circuit Court in the State of Indiana. B.D. was born on March 9, 2017. The Hamilton Superior Court in Indiana entered a judgment and order terminating Schmidt's parental rights to B.D. pursuant to her signed consent on March 13, 2017. The order stated that the identity of B.D.'s putative father was "unknown, the biological mother having failed or refused to identify him." It gave legal custody of B.D. to Adoptions of Indiana, which has "full authority" under Indiana statute to authorize out-of-state placement and to permit prospective adoptive parents to return to their state with the child, after compliance with the Interstate Compact for the Placement of Children has been achieved. Adoptions of Indiana placed B.D. with appellants on the same day the order was entered and they returned to Arkansas.
On March 22, 2017, appellants filed a petition to adopt B.D. in Arkansas.[6] They asserted they had cared for B.D. since his birth. The petition stated that Stanley was "not a suitable caretaker[,]" having "expressed a desire for the pregnancy to be terminated[,]" and that Schmidt had agreed to sign a waiver of service of summons and a consent to adoption. On the same date, appellants filed a petition for waiver of home study. On March 28, 2017, Schmidt filed a waiver of service and consent to adoption in which she stated that the document represented her "full and free consent to the adoption" based on her stated belief that said adoption was in B.D.'s best interest.
On April 17, 2017, Stanley filed an alternative answer to the appellants' petition for adoption denying that he was not a suitable caretaker as alleged and affirmatively asserting that he (1) was registered with Indiana's Putative Father Registry as of February 24, 2017; (2) had filed a verified petition to establish paternity in the appropriate Indiana circuit court on March 8, 2017; and (3) "[stood] able and ready to support and nurture" B.D. Accordingly, he requested denial and dismissal of the adoption petition.
Appellants filed an amended petition for adoption or guardianship, in the alternative, on May 5, 2017. Therein, they asserted a need for guardianship of B.D. due to his incapacity by virtue of his minority. Additional factual assertions not in the original petition were that Stanley (1) refused to provide any support for prenatal care of B.D. despite knowing Schmidt's location, (2) "engaged in a partying lifestyle and had sexual relations on a casual basis creating an environment which is unwholesome and unfit" for B.D., (3) was "engaged in a money-making scheme in an effort to profit off of the birth of the minor child[,]" and (4) abandoned B.D. within the meaning of Arkansas law. Stanley answered appellants' amended petition on May 9, 2017, responding to the appellants' assertions regarding adoption only; he failed to address any of the assertions in support of a guardianship.
Appellants then filed a second amended petition for adoption on June 2, 2017, in *10 which they incorporated all the allegations from their March 22, 2017 petition and their May 5, 2017 amended petition. Additional facts not previously included pertained to their marriage and home. They attached an adoption home study[7] and update as well as the Hamilton Superior Court's March 13, 2017 judgment and order.
Stanley's answers to appellants' June 5, 2017 requests for admission were filed on June 20, 2017. Of pertinence, Stanley (1) denied that he had no significant custodial, personal or financial relationship with B.D., averring that he had filed a petition for paternity prior to Schmidt leaving;[8] (2) affirmatively pled that he had no personal relationship with B.D. because Schmidt was incarcerated from July 2016 to December 2016 and "refused to reveal her whereabouts" upon her release; (3) admitted his knowledge of Schmidt's intent to place B.D. for adoption, further averring that he "went to the putative father registry and tried to stop the adoption"; and (4) denied that he made no attempt to financially support Schmidt during the pregnancy.
Stanley filed a motion for directed verdict on July 10, 2017. He stated that he had filed a verified petition to establish paternity in an Indiana circuit court on March 8, 2017, prior to B.D.'s birth. Attached as an exhibit thereto were his DNA results, which confirmed a 99.99% probability that he is the biological father of B.D. Furthermore, he asserted that Schmidt "took off" with B.D. "and came to Arkansas not disclosing to [appellee] where she was living so that he could not exercise any rights to the child" in contravention of the Parental Kidnapping and Prevention Act and the Uniform Child Custody Jurisdiction and Enforcement Act. He alleged that Schmidt and appellants had "unclean hands." He sought denial of both the adoption and guardianship petitions and an award of custody and control of B.D. to himself.
Stanley filed a July 20, 2017 petition for custody or to transfer the case to Indiana where he was a citizen and resident. Included as an exhibit thereto was a July 18, 2017 Ripley County, Indiana, Circuit Court order establishing paternity and taking a custody decision under advisement pending briefing from the parties. The order noted that there were currently three cases pending between Indiana and Arkansas, all involving B.D. Appellants responded in opposition to Stanley's directed-verdict motion as premature on July 24, 2017. On July 27, 2017, Stanley filed a petition for registration of foreign judgment in Arkansas, specifically the Indiana circuit court's July 18, 2017 order establishing paternity; he also sought to transfer jurisdiction as a result of the July 18, 2017 order.
On September 21, 2017, appellants filed a motion for summary judgment and a separately filed brief in support, asserting their entitlement to a declaration that Stanley's consent was not necessary as a matter of law. They argued that Stanley's consent was not necessary because he failed to meet the express requirements of Arkansas law, specifically that Stanley (1) was not married to Schmidt at the time of conception, (2) was not B.D.'s father by adoption, (3) was not in physical custody at the time the petition for adoption was filed, *11 (4) did not have an order granting him legal custody at the time the petition for adoption was filed, (5) had not been adjudicated by a court as B.D.'s legal father at the time the petition was filed and (6) did not have a significant custodial, personal or financial relationship with B.D. at the time the petition for adoption was filed.[9]
Stanley answered in opposition, with a separately filed brief in support, on October 6, 2017. He asserted that Arkansas law required written consent of a man who has acknowledged paternity, which he had done having "registered at the putative father registry in two states" and been "found to be the father" of B.D. He argued that Arkansas law would not require his consent if he was either a putative father who either (1) signed an acknowledgement of paternity or (2) was listed on the putative father registry but failed to establish a significant, custodial, personal, or financial relationship with B.D.[10] Accordingly, he argued that he "was deprived of the opportunity to establish a significant custodial, personal, or financial relationship with [B.D.] because the child was taken out of state, unbeknownst to him, when the child was four (4) days old and the petition for adoption was filed at the same time." He reasserted that appellants have unclean hands because:
[They were] asking the court to enter an adoption order when they (a) knew who the father was[,] (b) conspired to keep him from knowing when and where his child was[,] (c) had a homestudy [sic] performed prior to the mother giving birth in anticipation of adopting the child immediately after birth in order to deprive the father of an opportunity to have a relationship with his son[,] (d) scheduled a hearing on the termination of the mother's rights without notice to the known father four (4) days after the child was born[,] (e) took the child out of the state and moved him to Arkansas without advising the father instead of filing the petition in Indiana where the parties were located and the child was born[,] and (f) had family members refuse to tell him where his child was located.
Accordingly, Stanley sought an award of care, custody, and control of B.D.
On October 23, 2017, Stanley filed a petition for registration of foreign judgment, specifically the Indiana circuit court's October 17, 2017 order, which stated the following:
13. Adoptions of Indiana does not have the right to terminate the parental rights of Justin Stanley involuntarily and this Court has not and will not terminate Justin Stanley's parental rights involuntarily;
14. This Court, with the issuance of the order terminating the parental rights of Taylor Schmidt and granting custody to Adoptions of Indiana and the prospective adoptive parents, has fulfilled its limited duties in the life of the child;
15. There is no reason for this Court to hold a custody hearing regarding Stanley's parental rights as this court lacks jurisdiction to terminate his parental rights, as this is not the adoption court, it is not the proper court for Justin Stanley to contest the adoption proceeding;
16. The Motion to Dismiss is denied as this Court in this cause lacks jurisdiction to terminate Justin Stanley's parental *12 rights as this cause is a voluntary termination proceeding brought pursuant to I.C. § 31-35-1-1 et. seq., and as such, I.C. § 31-35-2-6 is inapplicable to these matters. Further, Justin Stanley is not a party to the instant cause of action;
....
19. This Court declines to exercise further jurisdiction over the Child as both the paternity court and the adoption court are both better forums than this Court to determine custody and where the Child will be permanently placed[.][11]
Stanley again sought to transfer jurisdiction as a result of the October 17, 2017 order.
On November 3, 2017, Stanley filed a petition for registration of foreign judgment, specifically the Ripley County, Indiana Circuit Court's November 1, 2017 order awarding Stanley custody of B.D.,[12] which stated the following:
The Court has held two previous hearings on these matters. The Court did not make a custodial finding, instead the Court exercised caution while waiting for the resolution of the termination matter in Hamilton County, Indiana. The Court's reading of the Hamilton County Order dated October 17, 2017, indicate that the matter is closed. The Court, having heard the evidence and the arguments of counsel, now FINDS and ORDERS as follows:
1. .... Father is an Indiana resident. [B.D.] was born in the State of Indiana. Adoptions of Indiana is an Indiana Corporation.
2. On February 24, 2017, Father, Justin Stanley, registered on the Putative Father Registry.
3. On March 8, 2017, Father filed his Petition to Establish Paternity. This case, the paternity case in Ripley County, Indiana, was filed before the termination case and before the adoption case.
4. On March 9, 2017, [B.D.] was born.
5. On March 9, 2017, a Petition to Terminate Parental Rights was filed in Hamilton County, Indiana.
6. On March 13, 2017, the termination hearing was held and Mother's parental rights to [B.D.] were voluntarily terminated.... Father's rights were not terminated, nor legally could they have been.
7. Father was not given notice of the termination hearing even though he had registered on the Putative Father Registry several weeks earlier.
8. As part of the termination matter, Adoptions of Indiana was given legal custody of [B.D.]
9. That same date, March 13, 2017, just four days post-birth, [B.D.] was removed from the State of Indiana and taken to Arkansas.
10. On March 21, 2017, Father found out the child had been born.
11. On July 18, 2017, this Court found Justin Stanley to be the natural father of [B.D.]
12. Father had never met [B.D.] This is due to no fault of Father.
13. Father has sent monies, via check, to the pre-adoptive parents (Intervenors herein). These checks were not cashed.
*13 14. Father sought visitation with [B.D.] His requests for visitation have been denied.
15. Father is employed and has a stable home. Although Father is not wealthy, he has means to provide for his son. Father also has the support of his extended family. Father's family accompanied him to all hearings.
16. Father, Justin Stanley, has taken all actions necessary under Indiana law to preserve his parental rights.
....
As all parties to this action are Indiana residents, as Indiana is the "home state" (UCCJA) and the "sending agency" (ICPC), and as Justin Stanley has been deprived of his fundamental right to raise his child, and as the Hamilton Superior Court has declined to exercise further jurisdiction, this Court finds it most appropriate for the paternity Court to establish custody.
Justin Stanley is the biological father and, therefore, enjoys the presumption of custody. Justin Stanley has not been shown to be unfit. The evidence presented at the hearing was to the contrary: Justin Stanley is a fit parent. When it was determined that Justin Stanley was the natural father of the child and had followed all dictates of Indiana law by timely filing with the Putative Father Registry, filed a Paternity petition before any other Court filings were made, continually pursued custody, and when this Court observes that it appears to be the only Court in Indiana with standing to make a present custodial determination there is a substantial change in circumstances mandating this Court to change custody to the natural father. Father is constitutionally entitled to an opportunity to develop a father/son relationship with his natural son and thereby entitled to custody of his son.[13]
On November 6, 2017, Stanley filed a motion for full faith and credit and brief with regard to the Ripley County, Indiana Circuit Court's November 1, 2017 order granting Stanley custody of B.D. Appellants responded in opposition on November 7, 2017, asserting that Stanley had failed to follow appropriate procedures. Given that appellants had filed an appeal in Indiana from the November 1, 2017 order, they sought a stay of enforcement of the same, pursuant to Arkansas Code Annotated section 16-66-604(a) ;[14] documentation of the appeal was attached thereto.
Appellants then filed a motion for reconsideration of the circuit court's "ruling at the trial held on November 7, 2017[,]" in which it concluded that "consent of [Stanley] was required under Arkansas Code Annotated § 9-9-206 [ (a)(2) ](G)." Appellants argued that said finding was erroneous because, their argument went, the subsection it was based on- Arkansas Code Annotated § 9-10-120(a) -"has no relevance to this case" and because, even if it were relevant, Stanley's consent would not be required because Stanley admitted that he did not have a required significant custodial, personal, or financial relationship with B.D. before the filing of the adoption petition. Stanley answered in opposition on November 14, 2017.
In the Sebastian County, Arkansas, Circuit Court's November 28, 2017 order denying motion for reconsideration and findings of fact, it made the following findings:
1. That the father Respondent, Justin Stanley, resides in Milan, Indiana, *14 and has never been in the state of Arkansas prior to this hearing;
2. That Respondent, Taylor Schmidt, mother of the child in question, was his ex-girlfriend and also resided in [Indiana];[15]
3. That they had a sexual relationship after meeting through the app "meetme" in which Respondent, Taylor Schmidt, conceived child;
4. That their relationship lasted approximately one (1) month;
5. That after that period Respondent, Taylor Schmidt, was incarcerated in [Indiana];[16]
6. That around July 10th Respondent, Justin Stanley, was told via facebook that Respondent, Taylor Schmidt, was pregnant;
7. That Respondent, Taylor Schmidt, stopped communication with Respondent, Justin Stanley, around July 19, 2016, after her incarceration; that Respondent, Justin Stanley, did not see Respondent, Taylor Schmidt, after her incarceration until the Court hearing in Ripley County;
8. That Respondent, Justin Stanley, tried to find and continued to communicate with her via facebook and was able to get a hold of a family member sometime in November, 2016;
9. That Respondent, Justin Stanley, consulted an attorney sometime around Christmas, 2016;
10. That Respondent, Justin Stanley, was told sometime in February, [sic] 2017, that Respondent, Taylor Schmidt, wanted to put the child up for adoption;
11. That thereafter, Respondent, Justin Stanley, registered himself on the Putative Father registry list in Ripley County, Indiana, and filed a paternity suit;
12. That Respondent, Justin Stanley, was not told of Respondent, Taylor Schmidt's, location or when she was to be released of her incarceration;
13. Respondent, Justin Stanley, did not learn of the child's birth until after the child was brought to the State of Arkansas;
14. That thereafter Respondent, Justin Stanley, registered with the Arkansas Putative Father Registry;
15. That the adoptive parents are residents of the Greenwood District of Sebastian County, Arkansas;
16. That Respondent, Justin Stanley, was never informed of the whereabouts of the child or allowed any contact with the child;
17. That Respondent, Justin Stanley, offered through his attorney's [sic] to pay child support for the minor child but was refused;
18. That Respondent, Justin Stanley, was ordered to pay for medical expenses in Indiana and has attempted to do so but was not allowed to obtain information from the hospital in order to do so because he was not a custodian;
19. That during the pregnancy Respondent, Justin Stanley, and Respondent, Taylor Schmidt, discussed the pregnancy and he told Respondent, Taylor Schmidt, that he wanted to be there for the child and they discussed the name of the child;
20. The Respondent, Justin Stanley, discussed his concern for Respondent, *15 Taylor Schmidt's, health and asked her to stop smoking pot, smoking cigarettes and drinking;
21. That Respondent, Justin Stanley, and Respondent, Taylor Schmidt, communicated consistently on facebook while they were in a relationship;
22. The Respondent, Justin Stanley, testified that while Respondent, Taylor Schmidt, never asked for anything to be provided during her pregnancy he asked her through facebook if she needed anything but Respondent, Taylor Schmidt, never responded back;
23. The Respondent, Justin Stanley, still tried to communicate with Respondent, Taylor Schmidt, after she stopped talking to him;
24. The Respondent, Justin Stanley, was not told where she was incarcerated and he did not hear from any family member until he contacted her aunt on facebook in November, 2016; The Respondent, Mr. Stanley, was not told whether or not the child was born while the Respondent, Taylor Schmidt, was incarcerated;
25. The Respondent, Justin Stanley, has a job, a car, a place to live and insurance available for the child as well as a plan in place for support of the minor child; he has no criminal history and neither do any of his family members;
26. The Respondent, Justin Stanley, does not pay rent as he is living with his mother and father, brother and girlfriend; that he trims trees for a living and has year-round employment; that he has degenerative back disease and a bulging disc for which he takes hydrocodone and has done so for approximately three (3) years; That Respondent, Justin Stanley, also has high blood pressure for which he takes medication;
27. The Respondent, Justin Stanley, has saved approximately $ 350.00 that he has put in a separate account for the minor child;
28. The Respondent's mother, Mrs. Stanley, testified that she would be able to help take care of her grandson and that she was in good health; that her son had a bad back but that it never prevented him from engaging in regular activities or working; that she has no concerns as a grandmother about the care her son could provide to the minor child;
29. Mrs. Stanley testified that the Respondent, Justin Stanley, has appeared at three court hearings in Ripley County, Indiana, regarding the child and had an attorney appear at hearings in Hamilton County, Indiana on their behalf; that a TPR petition had been filed in Hamilton County, Indiana that was denied;
30. That Respondent, Justin Stanley, filed for custody in Arkansas as a counter petition to the adoption petition filed herein;
31. Mrs. Stanley testified that she was at the hearing on paternity in Ripley County but Respondent, Taylor Schmidt, was not and the putative adoptive parents were present through an attorney;
32. Petitioner, Mr. Daily, testified that he and his wife were residents of Greenwood, Arkansas, since 2011 and that they had been married since 2010; that they have had custody of the minor child since March 11, 2017, when Respondent, Taylor Schmidt, signed over her legal *16 rights while she was still in the hospital; that Petitioner, Ms. Daily, did not leave Indiana with the minor child until March 13, 2017, when legal custody was placed with them via court order from Indiana;
33. Petitioner, Mr. Daily, testified that he has never refused contact with the father Respondent, Justin Stanley, and that that petition for adoption was filed after the child had been in the State of Arkansas for approximately four (4) days;
CONCLUSIONS OF LAW
34. According to Arkansas Code Annotated § 9-9-206 the written consent for an adoption of a minor child must be obtained by the father of the minor child if: (a)(2)(G) he has acknowledged paternity under Arkansas Code Annotated § 9-10-120(a).
35. Arkansas Code Annotated § 9-10-120(a) - the paternity statute - states that "A man is the father of a child for all intents and purposes if he and the mother execute an acknowledgment of paternity of the child pursuant to§ 20-18-408 or § 20-18-409, or a similar acknowledgment executed during the child's minority." The Court finds that registering, prior to the adoption petition being filed, is a "similar acknowledgment of paternity";
36. The Respondent, Justin Stanley, registered at the putative father registry prior to the Petition for Adoption being filed in March 22, 2017;
37. As per Arkansas Code Annotated § 9-9-207, the [appellee], Justin Stanley's consent to the adoption would not be required if: (10) a putative father of a minor who signed an acknowledgement of paternity but who failed to establish a significant custodial, personal, or financial relationship with the juvenile prior to the time the petition for adoption is filed; or (11) a putative father of a minor who is listed on the Putative father Registry but who failed to establish a significant custodial, personal, or financial relationship with the juvenile prior to the time the petition for adoption was filed.
....
41. .... this Court finds that Respondent, Justin Stanley's, efforts were enough to establish a significant custodial, personal or financial relationship in light of Respondent, Taylor Schmidt's, thwarting of his efforts.
42. Respondent, Taylor Schmidt, stopped communicating with Respondent, Justin Stanley, around July 19, 2017, and he did not find out where his child was located until the adoptive parents filed for adoption; that the child was removed from the State of [Indiana][17] approximately 4 days after he was born; that during the pregnancy the Respondents, Justin Stanley and Taylor Schmidt, discussed the pregnancy and the naming of the child, that Respondent, Justin Stanley, told Respondent, Taylor Schmidt, he wanted to be there for the child and he attempted to continue to communicate and ask if she need anything and tried to contact her family after she had stopped responding to his facebook posts;
*17 43. That Respondent, Justin Stanley, registered with the putative father registry in Indiana and Arkansas; that besides this hearing on adoption/custody he participated in three hearings in Ripley County, Indiana, with counsel and that he was represented by counsel in hearings in Hamilton County, Indiana;
44. That the mother, Respondent, Taylor Schmidt, was incarcerated for most of her pregnancy but that the father, Respondent, Justin Stanley, opened an account (post adoption filing) for the minor child and that he asked her if she needed anything but that she would not communicate with him.[18] ,[19]
Accordingly, the circuit court denied appellants' amended petition for adoption or in the alternative for guardianship, which they filed on May 5, 2017;[20] denied the appellants' September 21, 2017 motion for summary judgment; denied Stanley's July 10, 2017 motion for directed verdict; granted Stanley's July 20, 2017 petition for custody; and denied appellants' motion for reconsideration. This timely appeal followed.
While we review adoption proceedings de novo on the record, it is well settled that the decision of the trial court will not be disturbed unless clearly erroneous, giving due regard to the opportunity and superior position of the trial court to judge the credibility of the witnesses.[21] A finding is clearly erroneous when, although there is supporting evidence in the record, the appellate court viewing the entire evidence is left with a definite and firm conviction that a mistake has been committed.[22] Adoption statutes are strictly construed, and a person who wishes to adopt a child must prove that consent is unnecessary by clear and convincing evidence.[23]
This court addresses appellants' first and second arguments together. Appellants have argued that Stanley did not meet any of the requirements of Arkansas Code Annotated section 9-9-206 so that his consent was not required and that the circuit court "misinterpreted" Arkansas Code Annotated section 9-9-206(a)(2)(G). Appellants also argue that Stanley did not meet his burden under the requirements of Arkansas Code Annotated section 9-9-207, even if registering with the putative father registry is a "similar acknowledgement of paternity" under Arkansas Code Annotated section 9-10-120(a). This court need not address either argument.
While the circuit court did find that "registering, prior to the adoption petition *18 being filed, is a "similar acknowledgement of paternity[,]" it also found that Stanley's "efforts were enough to establish a significant custodial, personal or financial relationship in light of Respondent, Taylor Schmidt's, thwarting his efforts." Accordingly, the circuit court also found that Stanley's consent was required pursuant to Arkansas Code Annotated section 9-9-206(a)(2)(F). Appellants do not address this ground for requiring Stanley's consent. When an appellant fails to attack the circuit court's independent, alternative basis for its ruling, we will not reverse.[24] Therefore, we affirm both points.
Appellants' final argument is that Stanley was not "thwarted" in his efforts to comply with the mandatory requirements of Arkansas Code Annotated section 9-9-206. Appellants specifically argue that Stanley "did not do nearly enough to try and establish a relationship thereby requiring his consent to adoption and the birth mother did not thwart his efforts."[25] We look to the circuit court's findings.
The circuit court specifically found that (1) Schmidt told Stanley she was pregnant around July 10, 2016; (2) Schmidt ceased communication with Stanley once she became incarcerated around July 19, 2016; (3) Stanley attempted to locate Schmidt by contacting her family members on Facebook but was not told of her location or expected date of release; (4) Schmidt told Stanley "sometime in February 2017" that she wanted to put B.D. up for adoption; (5) Stanley registered himself on Indiana's putative father registry thereafter and filed a paternity suit; (6) Stanley learned of B.D.'s birth upon learning that B.D. had been taken to Arkansas, where Stanley then registered himself on the putative father registry; (7) Stanley was never informed of the whereabouts of or allowed to contact B.D.; (8) Stanley offered to pay child support through his attorney but it was refused; (9) Stanley attempted to pay medical expenses for Schmidt as ordered by the Indiana courts but was not allowed to do so; (10) Stanley discussed wanting to "be there for the child" and the naming of the child with Schmidt while she was pregnant; (11) Stanley expressed concern for Schmidt's health; (12) Stanley asked Schmidt if she needed anything while she was pregnant, via Facebook, but never received a response; (13) Stanley continued attempting to communicate with Schmidt even after she ceased communicating with him; (14) Stanley had a job, a car, a place to live and insurance available for B.D. as well as a "plan in place for support" of B.D.; and (15) Stanley had saved $ 350.00 in a separate account for B.D. This court holds that there was no error in the circuit court's findings. The circuit court clearly did not agree with appellants' assertion that Stanley "did not do nearly enough[.]" It is well settled that we will not reweigh the evidence on appeal, and credibility determinations are left to the circuit court.[26] We find no error.
Affirmed.
Gladwin and Murphy, JJ., agree.

(Repl. 2015).

(Repl. 2015).

(Repl. 2015).

Schmidt became incarcerated on this date.

Schmidt was incarcerated from July 2016 through December 2016.

Appellants had been permitted by Adoptions of Indiana to remove B.D. from Indianapolis, Indiana, where he had been born, to their home in Sebastian County, Arkansas.

Appellants completed a home study on July 16, 2015, which was updated on October 8, 2015, to show that appellants have been approved to adopt. This appears to be required prior to being approved to adopt in Indiana.

Though Stanley references Schmidt leaving, the brief does not show that she ever left Indiana.

This language tracks that of Arkansas Code Annotated section 9-9-206(a)(2)(A)-(F). It does not include Arkansas Code Annotated section 9-9-206(a)(2)(G).

See Ark. Code Ann. § 9-9-207(10) & (11).

(Emphasis in original.)

The petition itself refers to the Indiana circuit court's July 18, 2017 order-which was the subject of a prior foreign-judgment-registration petition-but the attached judgment order was filed on November 1, 2017. Accordingly, we treat this as a clerical error.

(Emphasis in the original.)

(Repl. 2005).

The order erroneously stated Illinois.

The order erroneously stated Illinois.

The order erroneously stated Illinois.

(Emphasis in original).

A nunc pro tunc order denying motion for reconsideration and findings of fact was filed on December 15, 2017. There is no discernible difference from the November 28, 2017 order.

This court notes that while the circuit court states that it is denying appellants' May 5, 2018 amended petition, its order specifically addresses statements and/or arguments that were only made in the second amended petition of June 2, 2017. Accordingly, we treat the circuit court's misidentification as a scrivener's error.

Davis-Lewallen v. Clegg , 2010 Ark. App. 627, at 5, 378 S.W.3d 185, 189 (citing Moreno v. Knowles , 2009 Ark. App. 164, 2009 WL 619185 ).

Id. , 2010 Ark. App. 627, at 5-6, 378 S.W.3d 185, 189 (citing Shields v. Kimble , 2010 Ark. App. 479, 375 S.W.3d 738 ).

Racine v. Nelson , 2011 Ark. 50, at 11, 378 S.W.3d 93, 100 (citing Powell v. Lane , 375 Ark. 178, 289 S.W.3d 440 (2008) ).

Bayron v. Ark. Dep't of Human Servs. , 2012 Ark. App. 75, at 7, 388 S.W.3d 482, 487 (citing Pugh v. State , 351 Ark. 5, 89 S.W.3d 909 (2002) ; see Hill v. Powell , 2016 Ark. App. 123, at 7, 2016 WL 739888 ("Hill's first argument cannot be examined because she did not challenge both independent grounds on which the circuit court relied in making its decision to deny her adoption petition.") ).

(Emphasis in original).

Blasingame v. Ark. Dep't of Human Servs. , 2018 Ark. App. 71, at 6, 542 S.W.3d 873, 877 (citing Newman v. Ark. Dep't of Human Servs. , 2016 Ark. App. 207, 489 S.W.3d 186 ).