

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–15–806

| | |
|---|---|
| VALOIS DYNASTY, LLC<br>APPELLANT<br><br>V.<br><br>CITY NATIONAL BANK, A NATIONAL BANKING ASSOCIATION, AS SUCCESSOR IN INTEREST TO IMPERIAL CAPITAL BANK<br>APPELLEE | **Opinion Delivered** March 2, 2016<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TWELFTH DIVISION<br>[NO. 60CV-14-3095]<br><br>HONORABLE ALICE S. GRAY, JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Judge

Valois Dynasty, LLC (Dynasty) appeals a June 2015 order from the Pulaski County Circuit Court that denied its motion to intervene and motion to set aside or amend the confirmation and approval of sale in a judicial foreclosure that involved three commercial properties. We affirm.

### I. *Facts*

In December 2010, Dynasty contracted with Little Rock Group, LLC (Little Rock Group) and Steve St. Clair. The parties dispute the terms and meaning of the agreement. The contract was drafted using the Arkansas Realtors Association's standard real-estate contract and is titled "Real Estate Contract (Commercial)." The contract lists Dynasty as



the "Buyer" and St. Clair and Little Rock Group collectively as the "Seller."  Paragraph 3

of the contract states:

> 3. PURCHASE PRICE. Buyer shall pay the following to Seller for the Property (the "Purchase Price").  $4,750,000 payable as follows:
>
> $600,000 cash at close, the balance of $4,150,000 less pay-off amount to lender at the time of closing will be paid in cash to Seller when fixed rate adjusts within two years.  Buyers are purchasing into the LLC and taking on full responsibility as such.  In so doing, they are relieving Steve St. Clair from any and all responsibility.  At closing, Buyer will be totally responsible for all payments, upkeep, maintenance, management, accounts payable, accounts receivable, insurance, taxes, legal fees, utilities, and other debt or liability.  Seller will be indemnified from any and all liability concerning these properties and Little Rock Group, LLC.  Buyer will be indemnified from any and all claims prior to closing.  Seller will remain on note and mortgage until fixed rate adjusts without recourse.

The contract gives the address and legal description as "Little Rock Group, LLC [i]ncluding

but not limited to the three apartment complexes:  Willow Creek Apartments [], Mabelvale

Pike Apartments [], and McCormick Apartments []."  Paragraph 17, titled

"CONTINGENCIES" lists as "additional requirements" that "It is understood and agreed

that the LLC and it's [sic] properties are being purchased 'AS-IS, WHERE-IS.'"

It is undisputed that no deed was ever recorded in favor of Dynasty.  The parties also

do not dispute that City National Bank (City Bank) held the promissory notes for the

Willow Creek Apartments, Mabelvale Pike Apartments, and McCormick Apartments.  We

refer to these three apartment complexes collectively as "the property."  City Bank filed a

complaint for foreclosure in August 2014.  City Bank named, and served, two defendants

in the foreclosure action:  Little Rock Group and Sunwest Bank.  Sunwest Bank held second

mortgages on the property, and it did not have priority over City Bank's first mortgages.

Sunwest Bank's interest or involvement is not at issue in this appeal.

Little Rock Group failed to answer City Bank's foreclosure complaint, and the circuit court entered a judgment and decree of foreclosure on 3 December 2014. The court ordered the court clerk (Commissioner) to sell the property and that the sale proceeds be used to satisfy the judgment amount. The time, terms, and place of sale were published in the Arkansas Democrat-Gazette on 24 March 2015. On 9 April 2015, the Commissioner sold the property to the highest bidder, which was City Bank (the mortgagee and note holder). The circuit court entered a confirmation of the sale and an order approving the deed on 21 April 2015. Dynasty filed a motion to intervene on 8 May 2015, alleging that it had a protected interest in the property and requested intervention as a matter of right and for permissive intervention. It also filed a motion "to set aside or amend confirmations and approval of report of sale" pursuant to Ark. R. Civ. P. 6(a), (c), and (d); 52(b)(1); 59(b); and 60(a).

The court held a short motion hearing on 4 June 2015, during which the parties submitted more evidence, including some testimony, to support their opposing positions. James Wade, a City of Little Rock employee, confirmed that the three apartment complexes were "constant problems" for the city; in one day they were given 108 life-safety violations and 142 non-life-safety violations. David Wilson testified that City Bank had hired him to manage the property. According to Wilson, City Bank had plans to improve the property so that it could sell it.

Janice Clayton, an escrow agent for First National Title Company, testified that she was familiar with the closing of the real-estate contract between Dynasty and Little Rock Group, which occurred in February 2011. The court received into evidence an escrow-

settlement statement from First National Title Company dated 28 February 2011. Among other things, Clayton explained that the escrow statement shows that Dynasty paid a $227,500 real-estate brokerage fee to Betty Krenz and Associates and that First National issued a title insurance policy for $4,750,000. The escrow statement also showed that City Bank received a $105,000 forbearance payment in the transaction, and evidence of Clayton's email correspondence with City Bank's attorney in connection with the closing was introduced. Property taxes were divided and prorated between Dynasty and Little Rock Group. On cross-examination, Clayton agreed that the real-estate contract "was essentially an infusion of money" from Dynasty into Little Rock Group and "really this wasn't the purchase of ground, of land, of the apartments. It was the purchase of an interest in the limited liability company, Little Rock Group, that actually owned the apartments."

The court entered an order denying Dynasty's motion to intervene and motion to set aside or amend the confirmation and approval of sale on 8 June 2015. The court gave no reason for its decision. Dynasty has appealed. On appeal, it argues that it had an ownership interest in the foreclosed properties and that the circuit court erred when it refused to allow Dynasty to intervene and set aside the sale of the foreclosed properties. Dynasty claims that it was denied intervention as a matter of right, or in the alternative, permissive intervention.

## II. *Discussion*

An intervention is a proceeding by which a person, not originally a party to an action, is permitted to become a party and therefore protect some alleged right or interest at issue.

*Gravett v. McGowan*, 318 Ark. 546, 886 S.W.2d 606 (1994).   Arkansas Rule of Civil

Procedure 24(a) provides:

> (a) Intervention of Right. *Upon timely application* anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(Emphasis added.)   To intervene as a matter of right when there is no statute expressly

permitting it, as in this case, our supreme court has interpreted Rule 24(a) to require that

the applicant show (1) he or she has a recognized interest in the subject matter of the

litigation, (2) the interest might be impaired by the disposition of the action, and (3) the

interest is not adequately protected by any of the existing parties to the action.   *Ark.*

*Democrat-Gazette, Inc. v. Brantley*, 359 Ark. 75, 194 S.W.3d 748 (2004).

> Permissive intervention is governed by Rule 24(b):
>
> *Upon timely application* anyone may be permitted to intervene in an action: (1) when a statute of this state confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.  When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action.  In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

(Emphasis added.)   An order denying a motion to intervene is immediately

appealable.  *See* Ark. R. App. P.–Civ. Rule 2(a)(2); *Cupples Farms P'ship v. Forrest City Prod.*

*Credit Ass'n*, 310 Ark. 597, 839 S.W.2d 187 (1992); *Billabong Prods., Inc. v. Orange City*

5

*Bank*, 278 Ark. 206, 644 S.W.2d 594 (1983).  Whether a motion to intervene is permissive or as a matter of right, the motion must be timely.  *See* Ark. R. Civ. P. 24(a)−(b).  The timeliness question is a matter within the discretion of the circuit court, which will be reversed only for an abuse of that discretion.  *Nat'l Enters., Inc. v. Union Planters Nat'l Bank of Memphis*, 322 Ark. 590, 910 S.W.2d 691 (1995).

Timeliness is determined from all the circumstances, with the following factors being considered:  (1) how far the proceedings have progressed; (2) any prejudice to other parties caused by the delay; and (3) the reason for the delay.  *Ballard v. Garrett*, 349 Ark. 371, 78 S.W.3d 73 (2002).  Lack of notice is a factor that may be considered.  *Nw. Ark. Area Agency on Aging v. Golmon*, 70 Ark. App. 136, 15 S.W.3d 363 (2000).  But after a final judgment has been entered, intervention is generally allowed only "upon a strong showing of entitlement" or a "demonstration of unusual and compelling circumstances."  *UHS of Ark., Inc. v. City of Sherwood*, 296 Ark. 97, 102, 752 S.W.2d 36, 38 (1988).

In this case, we do not determine whether Dynasty was entitled to intervene as a matter of right or permission because we hold that its motion to intervene was not made in a timely manner.  Although the circuit court made no factual findings on the threshold issue of timeliness, in the absence of a showing to the contrary, we presume that the circuit court acted properly and made findings of fact that were necessary to support its judgment.  *See Curry v. Pope Cty. Equalization Bd.*, 2011 Ark. 408, 385 S.W.3d 130.  According to our supreme court, the circuit court "must first be satisfied as to timeliness" of the motion to intervene.  *Cupples*, 310 Ark. at 602–03, 839 S.W.2d at 190.  Because we resolve this case

based on the timeliness of Dynasty's intervention motion alone, we offer no opinion on the merits of the motion to intervene.

Here, the circuit court did not abuse its discretion when it denied Dynasty's motion to intervene as untimely. By the time Dynasty filed its motion to intervene, the court had entered a judgment, the property had been sold, and the court had approved the sale. City Bank had already paid legal fees for the foreclosure litigation and incurred expenses in publication and court costs. City Bank had also invested in the apartments to improve and re-sell them and had hired David Wilson as the property manager. Dynasty has offered no reason for its delay, though it does assert an ownership interest in the property. Dynasty also does not express what purpose intervening would accomplish. It is an appellant's burden to demonstrate and explain reversible error. *Tri-Eagle Enters. v. Regions Bank*, 2010 Ark. App. 64, 373 S.W.3d 399. On this record, we conclude that the circuit court did not abuse its discretion in not finding "unusual and compelling circumstances" entitling Dynasty to intervene in the case after the final judgment was entered.

To round out our discussion, we address the court's denial of Dynasty's "post–trial" motion "to set aside or amend confirmations and approval of report of sale." When Dynasty filed its "post–trial" motion, its status before the circuit court was as a possible intervener. Dynasty was not a named party to the foreclosure action. As a general rule, a nonparty is not bound by a court's judgment, and we do not act upon an appeal taken by one not a party to the action below. *See In re $3,166,199*, 337 Ark. 74, 987 S.W.2d 663 (1999); *First State Bank of Eureka Springs v. Cook*, 192 Ark. 213, 90 S.W.2d 510 (1936). While we have recognized two circumstances where a nonparty may pursue appellate review of a circuit

court judgment, neither applies here.   The first exception is under Ark. R. Civ. P. 60(k)—but Dynasty sought no relief under this rule in the circuit court, so it cannot seek it here. Our supreme court has recognized that another exception exists under a "unique set of facts" when "the right of those interested, i.e., pecuniarily affected, to perfect an appeal where action had been taken without notice to the one complaining." *See Stuhr v. Oliver*, 2010 Ark. 189, at 4, 363 S.W.3d 316, 319.   This second exception does not apply because Dynasty has not challenged the price, the terms, or the court's approval of the judicial sale; nor has it explained how the judicial sale altered its financial interests.

### III.   *Conclusion*

We affirm the circuit court's denial of Dynasty's motion to intervene and motion to set aside or amend the confirmation and approval of sale.

Affirmed.

ABRAMSON and GLOVER, JJ., agree.

*Pamela Perry*, for appellant.

*Hardin, Jesson & Terry, PLC*, by: *Rex M. Terry* and *J. Gregory Magness*, for appellee.