SLIP OPINION     Cite as 2017 Ark. App. 441

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-16-1144

REBECCA STRICKLIN

APPELLANT

V.

ARKANSAS DEPARTMENT OF
HUMAN SERVICES AND MINOR
CHILD

APPELLEES

Opinion Delivered September 13, 2017

APPEAL FROM THE PULASKI
COUNTY CIRCUIT COURT,
ELEVENTH DIVISION
[NO. 60JV-14-575]

HONORABLE PATRICIA JAMES,
JUDGE

AFFIRMED

## N. MARK KLAPPENBACH, Judge

Rebecca Stricklin appeals from the order of the Pulaski County Circuit Court denying her petition to intervene in the dependency-neglect case involving her great-grandson, LE, after the parental rights of both of LE's parents were terminated. Stricklin argues that the petition to intervene should have been granted to allow her to pursue adoption of LE and to enforce "sibling rights" under the juvenile code. We affirm.

This dependency-neglect case began in April 2014 when the Department of Human Services (DHS) removed three-year-old LE from the custody of his mother, Jordan Goff, due to her drug usage. During the case, Stricklin's grandson, Jesse Everett, was determined to be LE's father. The couple have two other children who were in the care of relatives. Goff reported that six-year-old CE had been living with Everett's aunt and uncle in Texas since August 2013, and twenty-one-month-old RE had been in Stricklin's care for several months.

LE was placed in foster care, and the court ordered for the other children to remain with their relatives and for the relatives to seek guardianships. Stricklin obtained a guardianship over RE in December 2014. Reunification with Goff was initially the goal of LE's case, but ultimately the goal was changed to adoption.

In November 2015, the circuit court terminated the parental rights of both Everett and Goff. Everett appealed the termination.[1] On June 16, 2016, while Everett's appeal was pending, Stricklin filed a petition in the dependency-neglect case to adopt LE. The petition stated that Stricklin had custody of RE, that CE was currently living with her and would likely remain in her home permanently, and that granting the adoption would facilitate continued familial relationships and would be in the best interest of all the children. Stricklin claimed that she had previously sought custody of LE but that DHS had rejected her and excluded her from proceedings after she requested a DNA test to confirm her relation to LE. On June 21, 2016, the circuit court entered an order directing Stricklin to file her adoption petition as a separate case since Stricklin was not a party in the dependency-neglect case.

Instead of filing her petition in a new case, on July 28, 2016, Stricklin filed a petition to intervene in the dependency-neglect case and for enforcement of Arkansas Code

---

[1]The termination of Everett's parental rights was ultimately affirmed by this court on November 9, 2016. *See Everett v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 541, 506 S.W.3d 287.

SLIP OPINION

Annotated section 9-28-1003 (Repl. 2015).[2] She alleged that she was entitled to intervene as a matter of right pursuant to Arkansas Rule of Civil Procedure 24(a) and pursue her petition for adoption. She also claimed that LE's rights under section 9-28-1003 had been violated and that sibling visitation should be ordered. DHS responded to Stricklin's petition to intervene, asserting that she had no right to intervene and that intervention was not necessary to pursue adoption.

On September 21, 2016, the circuit court entered an order denying the petition to intervene and for enforcement of section 9-28-1003. The court found that Stricklin's petition, which was filed twenty-seven months after LE had been placed in foster care and eight months after parental rights had been terminated, was not timely filed. The court found that other parties would suffer prejudice if Stricklin was allowed to intervene so late in the proceedings and that she offered no reason for her delay. The court noted that Stricklin was not deprived of a remedy because an adoption petition could be considered on its own merits without her becoming a party to the dependency-neglect case. Regarding her claims under section 9-28-1003, the court found that Stricklin cited no authority to allow the court to enforce a code section on behalf of a nonparty. Stricklin now appeals this order.

There are two means by which a nonparty may intervene in a lawsuit: as a matter of

---

[2]Stricklin's petition cites section 9-27-1003 in its title and elsewhere, but the correct section is 9-28-1003, which governs safeguards for children in dependency-neglect cases who are in foster care or an out-of-home placement. Subsections (c) and (d) recognize the importance of sibling relationships and list additional safeguards for siblings in foster care.

right and by permission. Ark. R. Civ. P. 24 (2016). Stricklin asserted that she was entitled

to intervene as a matter of right pursuant to Rule 24(a), which provides as follows:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Ark. R. Civ. P. 24(a).

Whether a motion to intervene is permissive or as a matter of right, the motion must

be timely. *See* Ark. R. Civ. P. 24(a)–(b). The timeliness question is a matter within the

discretion of the circuit court, which will be reversed only for an abuse of that discretion.

*Valois Dynasty, LLC v. City Nat'l Bank*, 2016 Ark. App. 140, 486 S.W.3d 205. Timeliness

is determined from all the circumstances, with the following factors being considered: (1)

how far the proceedings have progressed; (2) any prejudice to other parties caused by the

delay; and (3) the reason for the delay. *Id.* Lack of notice is a factor that may be considered.

*Id.* After a final judgment has been entered, intervention is generally allowed only upon a

strong showing of entitlement or a demonstration of unusual and compelling circumstances.

*Id.*

Stricklin argues that her petition to intervene was not untimely and was not filed

postjudgment because the adoption phase of a dependency-neglect case does not arise until

after termination of parental rights and the exhaustion of appeals. She claims that she timely

asserted her rights before LE was even legally available for adoption. Stricklin contends that

SLIP OPINION

if her petition is considered to be filed postjudgment, there are unusual and compelling circumstances that entitle her to intervention, namely that she tried to have LE placed with her in a relative placement but was summarily denied and discriminated against by the circuit court with no recourse until LE was available for adoption.

In *Mann v. Arkansas Department of Human Services*, 2012 Ark. App. 352, 415 S.W.3d 45, this court affirmed the denial of a petition to intervene in a dependency-neglect case because the petition was ruled untimely. There, the petition for intervention was not filed until fifteen months after the children had been taken into DHS custody and seven months after parental rights had been terminated. This court further noted that the children would be prejudiced if intervention was allowed at such a late date because it would delay permanency, and Mann had no good reason for his delay in seeking intervention. Petitioners may not sit on their rights and wait until they are not satisfied with the way the case is progressing before deciding to intervene. *Mann*, *supra*.

Here, Stricklin did not petition to intervene until twenty-seven months after LE had been placed in foster care, nearly twice as long as the time in *Mann*. While Stricklin's petitions stated that she initially had concerns about paternity, evidence confirming Everett's paternity was introduced at the October 2014 review hearing. Stricklin still did not attempt to intervene for another twenty-one months. Although LE was not available for adoption during the entirety of that time, Stricklin could have sought to intervene earlier to assert her requests for placement and eventual adoption. The circuit court's June 2014 adjudication

5

order expressed concerns about RE being in Stricklin's care and stated that "[t]his is not a relative placement the Court would make." The court repeated this position in its June 2015 permanency-planning order. Stricklin denies that there was any valid basis for the court's finding, but there is no evidence in the record on appeal of any efforts by Stricklin to seek relative placement other than her apparent attempt to attend three of the hearings. The court's statements did not prevent Stricklin from obtaining counsel, seeking intervention, and asserting any rights or requests as to LE at any point during the pendency of this action. We cannot agree that Stricklin had no recourse but to wait until eight months after parental rights had been terminated.

As in *Mann*, Stricklin had no good reason for delay. Furthermore, by waiting to seek intervention until after Everett's parental rights had been terminated, Stricklin lost her status as great-grandmother. *See Suster v. Ark. Dep't of Human Servs.*, 314 Ark. 92, 858 S.W.2d 122 (1993) (affirming denial of intervention as a matter of right where the appellant's rights as a grandparent were derivative of her daughter's parental rights and as a result were terminated when her daughter's parental rights were terminated). The circuit court found that Stricklin's intervention in the dependency-neglect case was not necessary for her adoption petition to be considered and indicated that it would hear Stricklin's adoption petition once it was filed in a new case.[3] Under these circumstances, we cannot say that the circuit court's

---

[3]The circuit court's order directing Stricklin to file her petition in a new case stated that "[t]he clerk's office is instructed to assign the new file to Eleventh Division for continuity of proceedings."

SLIP OPINION

order denying intervention was an abuse of discretion. *See Valois*, *supra* (holding that there was no abuse of discretion in not finding unusual and compelling circumstances entitling appellant to intervene postjudgment where, in part, appellant did not express what purpose intervening would accomplish). Nor can we say that Stricklin was prejudiced by the circuit court's ruling.

Stricklin further argues that the circuit court erred in finding that as a nonparty she had no standing to assert rights under section 9-28-1003. Stricklin argues that LE and his two siblings were being deprived of their rights under section 9-28-1003 and that this created a right for her to intervene on the children's behalf. We disagree. Section 9-28-1003 lists "safeguards" for siblings in foster care. Here, only LE was taken into DHS custody. When Stricklin filed her petition to enforce the safeguards, she was not a party to the dependency-neglect case, was not LE's guardian or custodian and, due to the termination of Everett's parental rights, had no legal rights as LE's great-grandmother. The statute does not confer a right upon Stricklin to petition for enforcement.

Affirmed.

VAUGHT and MURPHY, JJ., agree.

*Miller, Miller & Churchwell, PLLC*, by: *Joseph Churchwell*, for appellant.

One brief only.