ROBERT J. GLADWIN, Judge
Chelsi Isbell and her mother, Janet Nicholas, appeal the Logan County Circuit Court's order terminating Chelsi's parental rights to A.I. (born June 20, 2016) and denying Janet's custody petition. Chelsi argues that (1) the circuit court erred by terminating her parental rights; (2) the circuit court abused its discretion by denying her motion for continuance; and (3) appellee Arkansas Department of Human Services (DHS) failed to make reasonable accommodations for her in accordance with the Americans with Disabilities Act (ADA). Janet argues that the circuit court clearly erred by (1) refusing to place the child with her and (2) terminating Chelsi's parental rights. We affirm.
I. Facts
DHS filed for emergency custody and dependency-neglect on March 10, 2017, and the attached affidavit alleged that police officers had encountered Chelsi walking down the street with A.I. Chelsi told them she was going to the store to get formula for the baby and that she had no food or running water at home. She told them she did not have money and that she planned to steal the formula. The officers went to Chelsi's home to do a welfare check. Chelsi told them she did not have family. When they asked her if Janet was her mother, she said that Janet was a woman who had moved her from Little Rock to Logan County to find a house and that she did not know Janet. Chelsi said that her water had been turned off for two weeks and that her electricity would be turned off soon. When told that DHS would take A.I. into custody, Chelsi was not upset or concerned, and she said, "Ok, what about me?" The ex parte order followed.[1]
Chelsi stipulated to the emergency conditions necessitating removal at a probable-cause hearing on March 17. She was granted supervised visitation and ordered to undergo drug screening; attend parenting classes; obtain a psychological evaluation; attend counseling; watch "The Clock is Ticking" video; and obtain stable housing, income, and transportation. DHS was ordered to consider any appropriate family member for A.I.'s placement. Janet filed a motion to intervene on May 2 asking that *22 she be granted visitation and custody as A.I.'s grandparent. Attached to the intervention motion was a custody petition alleging that she had a significant relationship with A.I., that DHS had arbitrarily rejected her for family placement, and that it was in the child's best interest to be placed in her custody.
A hearing on May 2 resulted in a second probable-cause order finding that A.I. was dependent-neglected and that she had been subjected to inadequate food, environmental neglect, and failure to protect. The goal was set for reunification, and Chelsi was ordered to submit to a drug-and-alcohol assessment and follow the recommendations; visit A.I. regularly; comply with her case plan; and remain in contact with her caseworker. DHS was ordered to conduct a home study on Janet.
At the June review hearing, the circuit court found that A.I. continued to need services and ordered that she remain in DHS custody. The goal remained reunification, and the court noted that Chelsi had not contacted DHS since the last hearing or allowed DHS entry into her home, nor had she attended her psychological-evaluation appointment. Janet was permitted to intervene in the case, and the court noted its concerns about Janet, including her problem with alcohol. Janet had a second DUI within a five-year period in March 2015, and her driver's license was suspended, after which an interlock device was placed on her vehicle. The court also found that she owned Nick's Village Pub, which was a bar that served alcohol and was open until 5:00 a.m.; however, Janet had testified that she did not believe it was a bar.
A hearing was held on October 17, and the circuit court found that Janet was "skating the issue on her alcohol use." The hearing was continued until December 5, and at its conclusion, the court ordered that the goal of the case be changed to adoption with DHS to file a petition for termination of parental rights. The court found that DHS had made reasonable efforts and that
8. The mother, [Chelsi], has not complied with the case plan in that she has no income, she failed to show for her hair-follicle appointment, she failed to show up for her psychological-evaluation appointment, she failed to start counseling or parenting classes, she has not contacted [DHS], and she has not visited her child since the case started. She was involuntarily committed by the State of Arkansas in July and spent seven days in acute care.
9. The Court heard testimony at this hearing from the following witnesses in regards to Janet Nicholas's petition for custody: Cynthia Cagle, a licensed social worker and therapist who evaluated Janet, her home, and business for a SAFE home study; Dr. Kenneth Counts, a psychologist and neuropsychologist, who evaluated Janet; and Janet, the grandmother. The Court also considered the testimony from FSW Pam Feemster and Janet Nicholas from October 17, 2017, when this review hearing started. The Court considered the Petition of the Intervenor, Janet Nicholas for custody of the minor child and completely denied her any relief, and ordering her dismissed with prejudice from the case and from further participation in it.
12. [sic] The Court made the following findings based upon the testimony and evidence: The Court will not place [A.I.] with Janet due to her minimization of her use of alcohol and her dishonesty and lack of details in her testimony to the Court and others about her history of alcohol use, driving-while-intoxicated convictions, and her ownership of a pub. Cynthia Cagle, who evaluated Janet for *23 a SAFE home study, reported that Janet told her that she had a DWI in 2012 and has not been arrested since. She told Dr. Counts that she had one DWI. But, she testified at the October l7th hearing that she actually had three DWIs, one in 2003, one in 2012, and the last one in Saline County or Searcy in 2015. At today's hearing, the Court found out that the 2015 DWI was in Pope County, not Saline County or Searcy, and that Janet had a fourth DWI in Greers Ferry in 2007 that she failed to testify about at the October 27th [sic] hearing. The Court also noted that Janet testified previously that she owns Nick's Village Pub and that it was a restaurant and not a bar but then acknowledged that it stays open to 5:00 a.m. in the morning. It sells alcohol, and has a happy hour. Janet is not participating in any after care like AA meetings or counseling for alcohol issues and testified today that she does not have an alcohol problem. Also, Janet is enabling her daughter, Chelsi, who has not come forward to the Court. The Court finds that even though there is a statutory presumption for relative placement, [A.I.] cannot be safely placed with Janet and that it is in the best interests of [A.I.] to remain in her current foster-home placement.
The order was filed on January 5, 2018, with a Rule 54(b) certificate attached. Ark. R. Civ. P. 54(b) (2018). Janet appealed; however, this court dismissed her appeal without prejudice. Nicholas v. Ark. Dep't of Human Servs. , 2018 Ark. App. 471, 561 S.W.3d 752.
In the meantime, DHS petitioned for termination of Chelsi's parental rights, alleging abandonment, failure to remedy the conditions that caused removal, and aggravated circumstances. Ark. Code Ann. § 9-27-341(b)(3)(B)(iv), (vii)(a ), and (ix)(a ) (Supp. 2017). Chelsi moved to dismiss the petition based on deficient service. In response, DHS filed a motion to continue, allowing Chelsi more time to respond to the termination petition. See Ark. R. Civ. P. 12(a)(1) (2018) (an incarcerated defendant has sixty days to file an answer after being served). Chelsi also filed a motion to dismiss, arguing that DHS sought to discriminate against her based on a disability protected by the ADA. She asked that Arkansas Code Annotated section 9-27-341(b)(3)(B)(iv), (vii)(a ), and (ix)(a ) be declared discriminatory and violative of the ADA because of the disparate impact as applied to her. The circuit court did not rule on this motion. On April 4, Janet filed a petition for custody alleging that since her dismissal, a material change in circumstances "concerning the statutorily preferred relative placement for custody" had occurred.
On April 27, Chelsi's counsel was substituted by order. Chelsi moved for a continuance on May 1, arguing that the hearing was set for May 2 and that she was "inpatient" at Quality Living Center for substance-abuse and mental-health issues. She claimed to be mentally incapable of attending and assisting her counsel at the May 2 hearing. Attached was a letter from Quality Living Center verifying Chelsi's treatment, and a letter from Dr. Mary Jo McLin recommending that Chelsi not be released to attend court.
At the start of the May 2 termination-of-parental-rights hearing, the circuit court stated that Janet should have filed a motion to intervene because her original petition for custody had been denied and dismissed with prejudice. The court allowed her to proceed on her new custody petition without filing an intervention motion. The court stated, "So, I'm going to deny that," apparently referring to Janet's oral motion to intervene.
*24 The court noted its inclination to deny Chelsi's "late" motion to continue but allowed her counsel to argue the motion. After the court's mistaken belief that Chelsi had received a continuance in the past was corrected, the court noted that the case had been continued due to both her former counsel's membership in the Arkansas legislature and DHS's motion for continuance. After hearing argument, the court denied the continuance, stating in part:
[Chelsi] did not come to the adjudication. She did not come to any review hearings. The only time she has appeared in this court, other than the probable cause hearing, was when she was with Ms. Capp and she was incarcerated on February the 5th. That is the only time she has appeared in this Court. And as I understand it, you want me to delay this matter, how long? Ninety days or indefinitely? How long? How long do you want me to delay this matter? I want something concrete. How long is this child's permanency going to be delayed by continuing this hearing? I want you to tell me exactly how long you want me to delay it. And can you assure me, if I delay it, that your client will participate when she has not participated in this case from day one?
Thereafter, Janet argued her custody petition, claiming that since the court's ruling dismissing her, she had addressed the court's concerns about her bar ownership and alcohol use. Janet said that she had divested herself of all interest in her bar and that she is paid $ 2000 a month for her equity in it. She said that she had been to nineteen AA meetings since December 2017 and had continued counseling with Dr. Counts. Janet said that her mother needs around-the-clock care and that she is the only person providing that care. She said that in anticipation of obtaining custody of A.I., she had hired someone to help. Pamela Feemster testified that she is a family service worker for DHS and that Janet was denied provisional placement due to her criminal history and background checks. The court ruled that Janet was not a proper placement for A.I. and that it would not be in A.I.'s best interest to be placed with her. Janet was again dismissed from the case.
After the circuit court heard testimony on the termination petition, DHS and the attorney ad litem recommended that Chelsi's parental rights be terminated. The court ruled that A.I. is adoptable and that termination was in her best interest, and it found that A.I. had been adjudicated dependent-neglected and had been out of the care and custody of Chelsi for more than twelve months; despite a myriad of services offered by DHS, Chelsi had not availed herself of the services; Chelsi had not seen the child since March 2017; Chelsi manifested the incapacity or indifference to remedy the circumstances that brought A.I. into care; Chelsi had not had contact with the caseworker since June 2017; Chelsi had been incarcerated for four to five months during the pendency of the case; Chelsi was in rehab, but the court did not know for how long; and there were aggravated circumstances in that there was little likelihood of reunification. Chelsi and Janet appealed.
II. Standard of Review
Arkansas Code Annotated section 9-27-341(b)(3) requires that an order terminating parental rights be based on clear and convincing evidence. Section 9-27-341(b)(3)(A) requires a finding that termination is in the best interest of the juveniles, including consideration of the likelihood that they will be adopted and the potential harm caused by returning custody of them to the parent. The order terminating parental rights also must be based *25 on one or more of the grounds for termination listed in section 9-27-341(b)(3)(B).
Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. Camarillo-Cox v. Ark. Dep't of Human Servs. , 360 Ark. 340, 201 S.W.3d 391 (2005). When the burden of proving a disputed fact is by clear and convincing evidence, the question that must be answered on appeal is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence was clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. Such cases are reviewed de novo on appeal. Calahan v. Ark. Dep't of Human Servs. , 2013 Ark. App. 508, 429 S.W.3d 372. However, we do give a high degree of deference to the circuit court, as it is in a far superior position to observe the parties before it and to judge the credibility of the witnesses. Dinkins v. Ark. Dep't of Human Servs. , 344 Ark. 207, 40 S.W.3d 286 (2001).
III. Chelsi's Appeal
A. Sufficiency of the Evidence
Chelsi claims that DHS failed to meet its burden of proof on its petition for termination of parental rights. Chelsi admits that the caseworker was correct in stating that she was not in compliance with the case plan, but she claims that extenuating circumstances should have been considered. She argues that the circuit court never mentioned the statutorily preferred possibility of placement of the child with a relative, i.e., Janet, when it made its best-interest analysis. She contends that she cannot dispute the circuit court's findings as to her condition "from and after" the date A.I. was removed from her custody; however, she claims there was evidence that she had undertaken, on her own and at her own cost, treatment designed to remedy the issues that led to removal.
Chelsi points to the evidence regarding her whereabouts throughout the case and DHS's provision of services to her. She argues that her location and addresses were contained in the court report; nonetheless, DHS caseworker Feemster testified that she did not know where Chelsi was and that DHS was never provided her address. Feemster admitted that she had made no contact with Chelsi while she was in jail and had made no inquiries about the services being offered to Chelsi at Quality Living. Chelsi points to Janet's multiple attempts to contact DHS with no results, and Janet's contention that DHS made no effort to provide services to Chelsi. She argues that during the case, she was either mentally imbalanced, using drugs, in jail, or receiving inpatient treatment. Thus, she claims that it was unreasonable to expect her to participate in and complete the case plan without DHS's help.
Chelsi relies on Cranford v. Arkansas Department of Human Services , 2011 Ark. App. 211, 378 S.W.3d 851, which held that termination did not provide greater stability to a child who had been in the custody of his grandparents and would continue to reside with them regardless. Chelsi claims that her case is the mirror image of Cranford because Janet should have been the person with whom A.I. was placed during these proceedings. She argues that under Arkansas Code Annotated section 9-27-359(b) (Repl. 2015), it is improper to seek termination of parental rights if the child is being cared for by a relative, and the relative is willing to pursue adoption, guardianship, or permanent custody. She contends that had the court placed A.I. with Janet, termination of parental rights *26 would not have been an option. She also contends that under section 9-27-359(b)(3), termination is not an option when it is shown that DHS has not provided the services required for reunification. She argues that the record is clear that DHS had no desire or intent to reunify this family and that termination of parental rights was always its goal.
Chelsi's appeal never directly challenges the sufficiency of the evidence supporting the statutory grounds the circuit court found to terminate her parental rights. Therefore, she abandons any challenge to those findings on appeal. Thomas v. Ark. Dep't of Human Servs. , 2018 Ark. App. 355, 553 S.W.3d 175. To the extent her argument attacks the statutory grounds, she argues only that she was not provided services. Therefore, Chelsi waived any argument relating to the aggravated-circumstances or abandonment grounds because neither requires DHS to offer services. Willis v. Ark. Dep't of Human Servs. , 2017 Ark. App. 559, 538 S.W.3d 842. Because there is no challenge to the circuit court's aggravated-circumstances or abandonment findings, the decision must be affirmed.
Chelsi also failed to expressly challenge the circuit court's best-interest finding. She did not contest either the adoptability prong or the potential-harm prong of the best-interest analysis. Thus, this court need not review those findings. Benedict v. Ark. Dep't of Human Servs. , 96 Ark. App. 395, 242 S.W.3d 305 (2006). Accordingly, we affirm.
B. Motion for Continuance
In Basham v. Arkansas Department of Human Services , 2015 Ark. App. 243, at 8, 459 S.W.3d 824, 829, we stated,
A trial court shall grant a motion for continuance only upon a showing of good cause and only for so long as is necessary. Jones-Lee v. Ark. Dep't of Human Servs. , 2009 Ark. App. 160, at 23, 316 S.W.3d 261, 273. The granting or denial of a motion for continuance is within the sound discretion of the trial court, and that court's decision will not be reversed absent an abuse of discretion amounting to a denial of justice. Id. , 316 S.W.3d at 273. Additionally, the appellant must show prejudice from the denial of a motion for continuance. Id. , 316 S.W.3d at 273.
In its order terminating parental rights, the circuit court found as follows:
[W]hile the mother is currently absent from this hearing because she is participating in an inpatient drug treatment program, she is NOT legally prohibited from leaving the program for the few hours necessary to appear before this court and participate in this hearing; nor does this court have any reason to believe there are any other legal bars to the mother's ability to be present for this hearing. Her absence, then, is voluntary-and therefore not a proper ground for continuing the hearing. Furthermore, the court finds that the motion for continuance, which was filed and submitted the day before this hearing, is an "eleventh hour" motion, and that granting it without compelling cause would be adverse to the interests of justice and unnecessarily delay the establishment of permanency for the juvenile.
In her argument that the circuit court abused its discretion by denying her continuance motion, Chelsi points to the circuit court's statements, questions of counsel, and misapprehension of the procedural history of the case. Chelsi admits that her motion was filed at the "eleventh hour," but she argues that it was filed on the same day her counsel learned that Chelsi was in no condition to appear in court, and her doctor had forbidden it.
*27 She contends that a motion for continuance should be granted upon a showing of good cause. See Butler v. Ark. Dep't of Human Servs. , 2010 Ark. App. 570, 2010 WL 3422456. The appellant must show prejudice from the denial of a motion for continuance. Id. at 6 (citing Smith v. Ark. Dep't of Human Servs. , 93 Ark. App. 395, 401, 219 S.W.3d 705, 708 (2005) ). She contends that prejudice abounds in this case because she was denied the chance to explain why she had not previously complied with the case plan and that, on her own, she was making real progress toward remedying the situation. She argues that under the Fourteenth Amendment to the United States Constitution, she was deprived of due process and of her liberty interest in the care and custody of her child. See Washington v. Glucksberg , 521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) ; Meyer v. Nebraska , 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).
Chelsi claims that the circuit court wanted to close the case, but she argues that under section 9-27-359(b)(3), DHS had not provided services to her. Thus, she contends that DHS was not authorized to file a petition for termination. Further, she claims that DHS was "dead set" against relative placement and that the "true" plan was not reunification. She claims that a rush to close a case file in order to put a child up for adoption should not trump her right to try to remedy her problems and become the parent she should have always been.
DHS argues that the circuit court did not abuse its discretion by denying the continuance motion. We agree. The circuit court did not act improvidently or without due consideration when it denied the request because the ultimate goal of the termination statute is to provide permanency for the minor child. Martin v. Ark. Dep't of Human Servs. , 2015 Ark. App. 407, 465 S.W.3d 881. In Butler , 2010 Ark. App. 570, the circuit court had denied a parent's request for continuance because she could not be present at the termination hearing. This court noted that there was no evidence or testimony offered to demonstrate the likelihood of appellant's attendance in the event a continuance was granted and that the appellant was represented throughout the termination proceeding. Id. at 3. The same is true herein. Further, Chelsi failed to prove prejudice because she did not show how her presence at the hearing would have changed the outcome. Sanderson v. Ark. Dep't of Human Servs. , 2012 Ark. App. 481, 2012 WL 4009599.
C. ADA
Chelsi argues that DHS failed to make reasonable accommodations in accordance with the ADA. She argues that she suffered from mental-health and drug-abuse disabilities that caused removal and that DHS did nothing to help her other than to tell her that help was available. However, Chelsi did not make that argument or even mention the ADA at the termination hearing. Nor did she argue or obtain a ruling about specific reasonable accommodations under the ADA or raise any other element of the ADA, each of which are essential inquiries in the application of the ADA. Oldham v. Ark. Dep't of Human Servs. , 2015 Ark. App. 490, 469 S.W.3d 825. Further, she did not obtain a ruling on her motion to dismiss wherein she had argued that the ADA was applicable. See Burnett v. Ark. Dep't of Human Servs. , 2011 Ark. App. 596, 385 S.W.3d 866. Accordingly, her ADA argument is not preserved for appellate review.
IV. Janet's Appeal
A. Placement with Grandparent
Janet contends that the circuit court's refusal to place the child with her, *28 the biological grandmother, was clearly erroneous and founded upon errors of law. Juvenile proceedings are equitable in nature; therefore, our standard of review on appeal is de novo. Rose v. Ark. Dep't of Human Servs. , 2010 Ark. App. 668, 2010 WL 3902858. The circuit court's findings of fact are not reversed unless they are clearly erroneous. Id. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. Id.
Janet recites the procedural history of the case. She asserts that the July 20 order allowed her intervention and found that her hot-check felony conviction had been expunged, that her driver's license had been reinstated, that she owned Nick's Village Pub, and that the court was concerned about her history with alcohol and her bar ownership. Janet points to Cynthia Cagle's home study that recommended she be approved for A.I.'s placement and to her psychological evaluation, performed by Dr. Kenneth Counts, who opined that she has an excellent understanding of parenting skills and that her alcohol consumption is not a problem. DHS caseworker Feemster testified that the home study recommended placement with Janet but that she believed Janet was enabling Chelsi and that she could not recommend placement with her because a provisional home study previously had been denied.
Janet stresses that she followed the circuit court's orders without DHS's help. When questioned by the court about why the home study recommending placement did not contain some information regarding her DWIs, Janet said that she had assumed DHS had provided all the information to the caseworker. During the hearing held December 5, 2017, Janet introduced an Arkansas DFA traffic-violation report that reflected one DWI conviction on March 2, 2016. When the court asked whether the additional DWIs not included in the home study would change her recommendation, Cagle suggested that Janet be randomly tested and attend AA meetings. Janet also points to Dr. Counts's opinion that she did not have an alcohol problem. She contends that despite this evidence, the circuit court changed the case plan to adoption and denied her any relief, dismissing her from the case and noting that she (1) had minimized her alcohol use, (2) had been dishonest about her DWIs and bar ownership, (3) had denied an alcohol problem and was not participating in AA or counseling, and (4) was enabling Chelsi.
After the termination petition was filed, Janet filed another petition for custody, claiming that she had addressed the issues relied on by the circuit court in dismissing her from the case. She asserted that she had completed a psychological assessment, a drug-and-alcohol assessment, parenting classes, and a home study. She claimed that she had been attending AA meetings, had divested herself of interest in the "bar," and had continued counseling with Dr. Counts. She testified that she had spent more than $ 20,000 trying to comply with the court's orders because DHS had not offered her services. She told the court that since its ruling dismissing her petition, she had thought about her drinking and wanted to work to solve the issue to obtain custody of A.I. Janet contends that the only evidence offered against her was the caseworker's testimony that DHS had denied placement with her because of her criminal history and background checks and that alternative placement had been denied by an agency board in Little Rock. Nevertheless, the circuit court denied her petition as not in the child's best interest, finding that her testimony lacked candor *29 during the hearing and that she was still enabling her daughter.
Janet argues that it is the State's public policy to preserve and strengthen the juvenile's family ties when it is in the best interest of the juvenile. Ark. Code Ann. § 9-27-302(2)(A) (Repl. 2015). Also, relative placement should be given preferential consideration when the relative caregiver meets all relevant child-protection standards and it is in the best interest of the child. See Ark. Code Ann. § 9-27-355(b)(1) (Supp. 2017); Ark. Code Ann. § 9-28-105 (Repl. 2015). And under Ellis v. Arkansas Department of Human Services , 2016 Ark. 441, 505 S.W.3d 678, the statutory preference applies throughout the case, not only to the initial placement. Thus, Janet argues that DHS's reason for not recommending her based on denial of their initial placement bears little weight. Janet contends that Cagle recommended she be approved for placement and that Counts opined that alcohol consumption was not a problem. She claims that DHS presented no expert testimony to rebut these opinions, and she submits that the evidence overwhelmingly shows that she meets all the relevant child-protection standards and that it is in A.I.'s best interest to be placed with her.
She cites Guthrey v. Arkansas Department of Human Services , 2017 Ark. App. 19, 510 S.W.3d 793, for the proposition that lack of credibility, standing alone, does not amount to a failure to remedy sufficient to terminate parental rights. She argues that her lack of candor about her past DWIs and her refusal to completely abandon her only child is not enough to terminate her familial rights to A.I., which is the net effect of the circuit court's order. Janet also cites Rhine v. Arkansas Department of Human Services , 2011 Ark. App. 649, 386 S.W.3d 577, wherein this court reversed termination of parental rights that was founded on the father's consumption of alcohol in violation of his parole and the circuit court's order prohibiting it. We held that the father's few lapses in judgment did not present a real risk of potential harm or that the child's best interests would be served by having her father permanently removed from her life. Rhine , 2011 Ark. App. 649, at 11, 386 S.W.3d at 583. Janet argues that she had no lapses relating to alcohol during the pendency of this case. Further, she has continued to attend AA meetings and counseling since the January 5, 2018 order dismissing her from the case. She claims, as in Rhine , that there was no evidence to show a risk of potential harm to A.I. if placed in her custody.
Finally, Janet contends that she only enabled her daughter only by helping her get her life back together. She claims that DHS did not contact Chelsi after June 6, 2017, yet DHS knew that Chelsi was in jail. Further, she claims that DHS did nothing to determine what kind of services Chelsi received in the clinic or to check on her mental-health progress. She argues that if the circuit court is concerned with her enabling Chelsi, she could be subjected to DHS monitoring.
DHS and the attorney ad litem contend that Janet is asking this court to reweigh the evidence before the circuit court. We agree. It is well settled that we will not reweigh the evidence on appeal, and credibility determinations are left to the circuit court. Blasingame v. Ark. Dep't of Human Servs. , 2018 Ark. App. 71, 542 S.W.3d 873. The circuit court regarded Janet's testimony about her DWIs and the amount of alcohol she consumed as vague and conflicting. In Davis-Lewallen v. Clegg , 2010 Ark. App. 627, 378 S.W.3d 185, we held that the preference given a relative is honored only if placement with them is in the child's best interest. In *30 Davis-Lewallen , the grandmother had petitioned for guardianship, and the foster parents had petitioned for adoption. This court held that it was within the province of the circuit court to find that a home study approving placement of the child with the grandmother was not credible because the grandmother had failed to provide information to a caseworker who had prepared the study. Davis-Lewallen , 2010 Ark. App. 627, at 6, 378 S.W.3d at 189.
Here, the home study recommending placement with Janet was not based on all the information regarding Janet's DWIs because she failed to provide that information. Further, Dr. Counts stated that information that Janet had more than one DWI would be concerning. Also, Janet testified on three occasions that she had three DWIs; however, she admitted at the hearing on December 5, 2017, that she had a fourth DWI. Regarding Janet's enablement of Chelsi, the circuit court noted that Janet continued to support and provide for Chelsi even though Chelsi refused to come to court, meet with her attorney, or accept services from DHS. At the May 2, 2018 hearing, Janet testified that she was no longer providing for Chelsi and that it was her mother who was paying for Chelsi's attorney's fees. However, later testimony revealed that Janet's mother has dementia, requires twenty-four-seven care, which Janet provided, and had essentially turned all of her finances over to Janet. Thus, in the order denying Janet's second petition for custody, the court reiterated its finding that Janet continued to enable Chelsi. After reviewing the evidence and the record below, we are not left with a definite and firm conviction that the circuit court made a mistake, and we affirm.
B. Services for Chelsi
Janet argues that the termination-of-parental-rights order should be reversed and that the case should be remanded for DHS to provide further services for Chelsi. However, we agree with both DHS and the attorney ad litem's arguments and hold that Janet does not have standing to challenge the termination of Chelsi's parental rights. First, they argue that Janet was not a party because the circuit court denied her oral motion to intervene at the May 2, 2018 hearing after she had been dismissed from the case pursuant to the January 2018 order. See Stricklin v. Ark. Dep't of Human Servs. , 2017 Ark. App. 441, 528 S.W.3d 321. Her pending motion for custody was heard on May 2, but DHS and the ad litem contend that the information in the record is not sufficient to show that she was granted party status. We agree that the record here is not clear. However, we agree with their second contention as well-even if she is considered a party, Janet lacks standing to assert the violation of another party's rights. See, e.g. , Cole v. Ark. Dep't of Human Servs. , 2018 Ark. App. 121, 543 S.W.3d 540.
Affirmed.
Murphy and Brown, JJ., agree.

The circuit court held that no parental rights attached for the putative fathers named in this case, and this appeal does not include them.